### In the ESTATE OF Charles Frank HENDLER, Deceased.

### No. 05–08–01146–CV.

Court of Appeals of Texas, Dallas.

June 25, 2010.

Rehearing Overruled Aug. 17, 2010.

---

Robert D. Lybrand, Turner & Lybrand, P.C., Coppell, TX, for Appellant.

Erny G. Simmons, Glast, Phillips & Murray, Dallas, TX, for Appellee.

Before Justices MOSELEY, FITZGERALD, and LANG–MIERS.

## OPINION

Opinion By Justice FITZGERALD.

Nine years after decedent Charles Frank Hendler executed his will, he handwrote a note at the bottom of the will's signature page. In this probate matter, the trial court granted summary judgment that the note was a valid holographic codicil that republished the will. The court further ruled that Charles's two children, who were born between the execution of the will and the writing of the note, were not pretermitted children entitled to shares of his estate under the probate code. We affirm in part and reverse and remand in part.

## I. BACKGROUND

The parties are appellee Richard John Hendler, who was Charles's brother and is the executor of his estate, and appellant Virginia R. Dillon, who divorced Charles in 1999 and appears solely as next friend of Charles's children, Austen Charles Hendler and Katherine Rose Hendler.

The following facts were established by stipulation. Charles left a valid will dated April 30, 1990. At the time he made the will, he was married to Melissa McCormick and had no children. In the 1990 will, Charles left all of his property to Richard or Richard's children; he left nothing to McCormick. He and McCormick later divorced, and he married Virginia. Charles and Virginia had two children: Austen, who was born in 1995, and Katherine, who was born in 1997. Charles and Virginia were divorced on March 12, 1999. At the bottom of the signature page

of the 1990 will is a handwritten note that reads as follows:

> 9/9/99 I am now divorced from Melissa McCormick & Virginia Dillon. The same will and testament exists now as on 4/30/99 Charles Hendler

The note is entirely in Charles's handwriting. Charles died on September 1, 2006.

After Charles's death, Richard filed an Application for Probate of Will and Holographic Codicil and Issuance of Letters Testamentary. Charles's 1990 will was attached to the Application. The trial judge signed an order that admitted the 1990 will to probate and specifically reserved to Richard the right to prove at some future time that the handwritten note was a valid holographic codicil to Charles's will. Virginia then filed a petition for declaratory judgment in which she requested, among other things, a declaration that Austen and Katherine were pretermitted children pursuant to section 67 of the Texas Probate Code.

Richard filed a motion for summary judgment in which he contended that the handwritten note was a valid holographic codicil that republished the entire 1990 will after the births of Austen and Katherine, thereby defeating Virginia's claim that Austen and Katherine were pretermitted children. He argued in the alternative that Charles "otherwise provided for" Austen and Katherine outside the will, which would preclude them from inheriting any of Charles's estate even if they were pretermitted children. Virginia filed a motion for summary judgment in which she requested judgment that Austen and Katherine were pretermitted children, that Charles did not otherwise provide for them, and that each child was entitled to a one-half share of Charles's estate.

On May 12, 2008, the trial judge signed an order granting Richard's motion for summary judgment and denying Virgi-

nia's motion. The judge ruled that the handwritten note was a valid holographic codicil that was entitled to probate, that Austen and Katherine were not pretermitted children, and that Austen and Katherine were otherwise provided for by Charles. On May 13, 2008, two witnesses appeared before the trial judge and swore that the handwritten note was entirely in Charles's handwriting and that Charles was older than 18 and of sound mind on September 9, 1999. That same day, the trial judge signed an order admitting the "Holographic Codicil dated September 9, 1999" to probate. Virginia separately appealed the May 12 and May 13 orders. Those orders completely dispose of one phase of the proceedings—the declaratory-judgment action to determine whether Austen and Katherine are pretermitted children—and are thus appealable. *See Crowson v. Wakeham*, 897 S.W.2d 779, 782–83 (Tex.1995); *see also In re Estate of McDougal*, 552 S.W.2d 587 (Tex.Civ.App.-Tyler 1977, writ ref'd n.r.e.) (deciding appeal from order admitting will to probate and denying probate of alleged codicil). Moreover, the trial court's May 12 summary-judgment order recites that it "finally disposes of all parties and all claims and is appealable." *See Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 205 (Tex.2001). We consolidated Virginia's appeals.

## II. STANDARD OF REVIEW

We review a summary judgment de novo. When both parties move for summary judgment, each bears the burden of establishing that it is entitled to judgment as a matter of law. If the trial court grants one motion and denies the other, the non-prevailing party may appeal both the granting of the prevailing party's motion and the denial of its own motion. We review the summary-judgment evidence presented by both parties and determine all questions presented. We may affirm the trial court's summary judgment, reverse and render judgment for the other party if appropriate, or reverse and remand if neither party has met its summary-judgment burden. *U.S. Fire Ins. Co. v. Scottsdale Ins. Co.*, 264 S.W.3d 160, 164–65 (Tex.App.-Dallas 2008, no pet.).

A party that moves for summary judgment on a matter as to which it bears the burden of proof, such as a defendant seeking summary judgment on an affirmative defense or a plaintiff seeking summary judgment on its own claim, must conclusively establish every necessary element in its favor. *See id.* at 165. "A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence." *W.H.V., Inc. v. Assocs. Hous. Fin., LLC*, 43 S.W.3d 83, 87 (Tex.App.-Dallas 2001, pet. denied). We must take the evidence favorable to the nonmovant as true and draw every reasonable inference from the evidence in favor of the nonmovant. *U.S. Fire Ins. Co.*, 264 S.W.3d at 165.

## III. ANALYSIS

Virginia raises four issues on appeal. In her first two issues she argues that Austen and Katherine are pretermitted children because Charles's handwritten note was not a codicil or, alternatively, did not republish his 1990 will. In her third and fourth issues, she argues that Austen and Katherine were not "otherwise provided for" by Charles.

### A. Pretermitted children

A "pretermitted child" is a testator's child who is born or adopted after the execution of the testator's will. TEX. PROB. CODE ANN. § 67(c) (Vernon Supp. 2009). A pretermitted child not mentioned in the testator's will succeeds to a portion of the testator's estate under some circum-

stances. *Id.* § 67(a). If Charles's handwritten note was a valid holographic codicil that republished the 1990 will as of the date of the codicil, then Austen and Katherine are not pretermitted children and are not entitled to take from Charles's estate. The trial court concluded as a matter of law that the handwritten note was a valid codicil and that Austen and Katherine are not pretermitted children. Virginia argues that the trial court erred because (1) the note shows on its face that it was not written with testamentary intent, (2) the note does not meet the statutory requisites for a codicil, and (3) even if the note is a codicil, it does not sufficiently reference the 1990 will to republish it. We conclude that fact issues exist such that neither party was entitled to summary judgment.

### 1. Testamentary intent

■ To be a codicil, an instrument must be executed with testamentary intent. *Luker v. Youngmeyer,* 36 S.W.3d 628, 630 (Tex.App.-Tyler 2000, no pet.); *Price v. Huntsman,* 430 S.W.2d 831, 832 (Tex.Civ.App.-Waco 1968, writ ref'd n.r.e.). Testamentary intent is the intent to create a revocable disposition of property that will take effect after death. *Hinson v. Hinson,* 154 Tex. 561, 280 S.W.2d 731, 733 (1955). If it is unclear from the language of an instrument whether its maker created it with testamentary intent, we may also consider evidence of the surrounding facts and circumstances. *Langehennig v. Hohmann,* 139 Tex. 452, 163 S.W.2d 402, 405 (1942); *In re Estate of Brown,* 507 S.W.2d 801, 803–05 (Tex.Civ.App.-Dallas 1974, writ ref'd n.r.e.). Richard contends the evidence shows conclusively that Charles acted with testamentary intent when he wrote the note; Virginia contends the evidence shows conclusively that he did not act with testamentary intent when he wrote it. We conclude that a genuine fact issue exists as to whether Charles acted with testamentary intent, so neither party was entitled to summary judgment.

■ We begin with the language of the note itself, and we conclude that the language does not conclusively demonstrate or negate testamentary intent. The note is both brief and cryptic, reciting "9/9/99 I am now divorced from Melissa McCormick & Virginia Dillon. The same will and testament exists now as on 4/30/99[.]" The note could be reasonably read merely to state facts—that the testator was twice divorced, and that he had not revoked whatever will existed on April 30, 1999. On this reading, the note demonstrates no testamentary intent. On the other hand, a reasonable reader could infer from the language that Charles was acting with testamentary intent. A reader could conclude that Charles had reviewed his will with his two divorces in mind, decided that his will still correctly stated his testamentary wishes, and intended to republish his will by writing that his same will still "exists." Both readings are reasonable, so the language of the note standing alone furnishes no basis for summary judgment.

The precedents cited by the parties do not persuade us otherwise. Richard relies on *Wade v. Sherrod,* 342 S.W.2d 17 (Tex. Civ.App.-El Paso 1960, writ ref'd n.r.e.). In that case, the testator made a codicil in which she stated, "I further declare that my last will and testament is the last will and testament ... executed by me on June 26, 1948[.] This will has never been revoked by me, and I hereby *reaffirm* it as being in full force and effect." *Id.* at 20 (emphasis added). The language in *Wade* clearly manifested testamentary intent. The language of Charles's handwritten note, by contrast, contains no definitive language of present reaffirmation or republication of any particular prior will. He stated only that the same will "ex-

ist[ed]" on September 9, 1999, as on April 30, 1999. Although a reasonable person could conclude from the language of the note that Charles wrote it with testamentary intent, a reasonable person could also disagree on this point. Thus, Richard was not entitled to summary judgment on the essential element of testamentary intent.

Nor do Virginia's cases convince us that the language of the note conclusively negates testamentary intent. Her most apposite case is *Hinson,* in which the decedent attempted to make a valid will that failed for lack of proper attestation and then later handwrote a purported codicil on a separate sheet of hotel stationery. 280 S.W.2d at 732–33. The purported codicil began, "Supplementary to my Last Will, it still stands as is," *id.* at 733, which is similar to the language Charles handwrote on his will in the instant case. But the purported codicil in *Hinson* went on to discuss many distinct matters, such as where to find the decedent's will, advice to his wife about how to dispose of their property, and the name of someone who could give her legal advice. *Id.* It did not state an intention that it should be regarded as a will, nor did it contain language ordinarily used to make a disposition of property. *Id.* at 734. The Texas Supreme Court, reading the entire note in context, concluded that the note "convey[ed] the idea that [testator] ha[d] something in mind other than the making of a testamentary disposition of his property." *Id.* at 734. The court further concluded that the decedent intended that his property would pass and vest under his prior (invalid) will, and that he did not intend to create a new testamentary instrument with the note on the hotel stationery. *Id.*

*Hinson* is distinguishable from the instant case because Charles's note provides much less context for the circumstances of its writing and Charles's purpose in writing it than the *Hinson* note did. The *Hinson* note contained many instructions and suggestions for the testator's wife to follow after his death, and it clearly indicated that the author was not again acting with testamentary intent. Charles's note, by contrast, is much briefer, and his purpose is simply unclear. Although a reasonable person might agree with Virginia that Charles was not acting with testamentary intent when he wrote the note, a reasonable person could also agree with Richard that the note shows a purpose to reaffirm Charles's prior will. Thus, a genuine fact issue exists as to whether Charles wrote the note on his will with testamentary intent.

Although the parties' stipulations establish a few extrinsic facts about Charles's circumstances when he wrote the note on his will, those facts do not conclusively establish whether Charles acted with testamentary intent when he wrote the note. The fact that he fathered two children after executing his 1990 will and before he wrote the note could support an inference that he wrote the note with testamentary intent, i.e., he wanted to republish the will so that it would be carried out as written despite the births of his two children. But this inference is undermined by the fact that he did not mention his children in the note itself. The extrinsic evidence is not so compelling on the question of testamentary intent that "ordinary minds could not differ." *W.H.V., Inc.,* 43 S.W.3d at 87.

Because reasonable minds could differ as to whether Charles wrote the note with testamentary intent, the trial court erred by granting summary judgment that the handwritten note was entitled to probate and that Austen and Katherine were not pretermitted children. The court correctly denied Virginia's motion for summary judgment as to this issue.

**2. Other statutory requirements**

Virginia argues the trial court should have ruled that the handwritten note is not a valid codicil as a matter of law because it does not meet the statutory requirements found in section 3(ff) of the probate code. That section provides:

"Will" includes codicil; it also includes a testamentary instrument which merely:

(1) appoints an executor or guardian;

(2) directs how property may not be disposed of; or

(3) revokes another will.

TEX. PROB.CODE ANN. § 3(ff) (Vernon Supp. 2009). Virginia contends that the handwritten note does not accomplish any of the three things set forth in section 3(ff), and she adds that it also does not dispose of property.

■■ Our review of the record reveals that Virginia did not present this argument to the trial court as a ground for summary judgment. "A motion [for summary judgment] must stand or fall on the grounds expressly presented in the motion." *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993); *accord Smith v. Deneve,* 285 S.W.3d 904, 910 n. 1 (Tex.App.-Dallas 2009, no pet.). Accordingly, we cannot consider it on appeal.

**3. Sufficient reference to a prior will**

■ Finally, Virginia argues that even if the handwritten note is a valid codicil, the trial court should have granted summary judgment that the note did not republish the 1990 will because it did not sufficiently reference that will. As she points out, the note does not refer to any specific will; it refers only to whatever will existed "on 4/30/99." Richard argues that this reference is sufficient because there was no evidence that Charles executed a will after he executed the 1990 will and because Richard adduced his own affidavit and an affidavit from Charles's lawyer proving that the 1990 will was the only will by Charles they knew of and the only will found among Charles's personal effects and records. Thus, Richard contends, the handwritten note sufficiently referred to the 1990 will.

"[A] properly executed and valid codicil which contains a sufficient reference to a prior will, operates as a republication of the will in so far as it is not altered or revoked by the codicil." *Hinson,* 280 S.W.2d at 735; *accord Aven v. Green,* 159 Tex. 361, 320 S.W.2d 660, 662 (1959) (following *Hinson* ). The parties cite no case law further explaining how much specificity is required to constitute a "sufficient reference" to a prior will. The few Texas cases mentioning this proposition of law are unhelpful because they involve codicils that are more specific than the handwritten note in this case. *See, e.g., Aven,* 320 S.W.2d at 662 (codicil referred to decedent's "last will and testament bearing the date February 27, 1948").

■ We reject Virginia's argument for the following reasons. The *Hinson* rule requires a "sufficient" reference to the prior will, not a "specific" or "exact" reference. *See Hinson,* 280 S.W.2d at 735. "Sufficient" means "enough" or "adequate." THE NEW OXFORD AMERICAN DICTIONARY 1699 (2001). So we conclude that the *Hinson* rule does not require a codicil to include any particular facts about the prior will in order to republish it; the codicil is sufficient if it gives enough information to permit adequate identification of the will being republished. Richard's evidence was sufficient to meet this standard. The parties stipulated that Richard's 1990 will was valid. The affidavits that Richard filed established that Charles's attorney prepared no other wills for him and was aware of no other wills executed by Charles. The affidavits also established that a thorough and diligent search of

Charles's personal effects and records yielded no other wills besides the 1990 will. All of this evidence tended to show that the 1990 will was the will that "existed" or was in effect on April 30, 1999, the date mentioned in the note.

■ The fact that the note was written on a page of the 1990 will constitutes some additional evidence that the note was made in reference to that will. *See In re Plummel's Estate*, 151 Cal. 77, 90 P. 192, 193–94 (1907) (holding that handwritten codicil's presence on back of attempted holographic will constituted a sufficient reference to that will); *In re Cazaurang's Estate*, 42 Cal.App.2d 796, 110 P.2d 138, 139–40 (1941) ("[T]he fact that the codicil is written upon a sheet of paper containing a writing which purports to be testamentary in character is sufficient to justify the inference that such writing is the will referred to by the codicil."); *Hobart v. Hobart*, 154 Ill. 610, 39 N.E. 581, 582 (1895) ("When the codicil is written on the same paper as the will, or clearly and unmistakeably refers to the will, so as to preclude all doubt of its identity, proof of the codicil establishes the will without further proof, except such portions thereof as are revoked or altered by the codicil."). Moreover, Virginia does not refer us to any evidence in the record suggesting that Charles executed any other will after the 1990 will. Once a valid will is proved, its continuance is presumed in the absence of evidence of revocation. *In re Estate of Teal*, 135 S.W.3d 87, 92 (Tex.App.-Corpus Christi 2002, no pet.); *Harkins v. Crews*, 907 S.W.2d 51, 59 (Tex.App.-San Antonio 1995, writ denied). This presumption also supports the conclusion that Charles's 1990 will was still in effect on April 30, 1999.

For these reasons, we reject Virginia's argument that she was entitled to a summary judgment ruling that the handwritten note did not sufficiently refer to Charles's 1990 will.

#### 4. Conclusion

The evidence raised a genuine fact issue as to whether Charles acted with testamentary intent when he wrote the note on his will. Accordingly, the trial court erred by ruling as a matter of law that the handwritten note was a valid codicil, by ruling as a matter of law that Austen and Katherine are not pretermitted children, and by admitting the handwritten note to probate. However, Virginia did not conclusively establish that Austen and Katherine were pretermitted children. Neither party was entitled to summary judgment on these issues.

### B. "Otherwise provided for"

The trial court granted Richard's summary-judgment motion and denied Virginia's motion for a second, independent reason, ruling that Austen and Katherine should inherit nothing even if they are pretermitted children because Charles "otherwise provided for" them outside his will. *See* TEX. PROB.CODE ANN. § 67(a). Virginia contends that Richard failed to prove conclusively that Charles "otherwise provided for" Austen and Katherine. We agree with Virginia as to Katherine, but not as to Austen.

The probate code explains when a child is "provided for" within the meaning of section 67(a):

(d) For purposes of this section, a child is provided for ... if a disposition of property to or for the benefit of the pretermitted child, whether vested or contingent, is made:

(1) in the testator's will ...; or

(2) outside the testator's will and is intended to take effect at the testator's death.

*Id.* § 67(d). Thus, to bring Charles's children within section 67(d)(2), Richard had to show that Charles (1) made a disposition of property (2) to or for the benefit of his children (3) that was outside his will and (4) that was intended to take effect at Charles's death. *Id.* § 67(d)(2).

▇▇▇ The legislative purpose of the pretermitted-child statute is not to limit the testator's power to dispose of his estate, but to guard against testamentary thoughtlessness. *In re Estate of Ayala,* 702 S.W.2d 708, 711 (Tex.App.-San Antonio 1985, no writ). "For the statute to apply it must appear from the will, interpreted in light of all the circumstances, that the failure to provide for the child or descendant was accidental, or due to inadvertence or oversight." *Id.* at 711. Thus, the proper application of section 67 depends on the testator's intent as revealed through his or her actions. If a testator dies leaving a pretermitted child who is not mentioned in the will and not provided for in the will or otherwise, the statute assumes that the omission was accidental, and it remedies the accident by allowing the pretermitted child to inherit from the estate. *See generally* TEX. PROB.CODE ANN. § 67(a). But if the testator performs some act outside the will that disposes of property and shows an intention to make future provision for the pretermitted child upon the testator's death, then the statute assumes that the child's omission from the will was intentional, and the child may not take from the estate. *See Estate of Ayala,* 702 S.W.2d at 711 (noting New York cases holding that New York's similar statute is fulfilled by "any act of the testator indicating an intention to make future provision for the child").

Richard contends that three stipulated facts demonstrate that Charles provided for Austen and Katherine outside of his will: (1) Austen and Katherine are collecting social-security death benefits because of Charles's death, (2) a default judgment against Charles established a child-support obligation against him that did not terminate upon his death, and (3) as to Austen alone, Charles designated him the contingent beneficiary of a life insurance policy in which Virginia was named the primary beneficiary. Virginia contends that these facts do not suffice under section 67(d). We examine each fact in turn.

### 1. Social-security death benefits

▇▇▇ Richard argues that by paying his social-security taxes Charles made a disposition of property for the benefit of Katherine and Austen that was intended to take effect at his death. He relies on the case of *Estate of Gorski v. Welch,* 993 S.W.2d 298 (Tex.App.-San Antonio 1999, pet. denied). In that case, Gorski died leaving both a will and a pretermitted child named Marissa who began collecting social-security death benefits upon his death. *Id.* at 300–01. Gorski had also consented to an order requiring him to pay child support for Marissa for a definite period of time, an obligation that did not terminate upon his death. *Id.* at 302. The trial court ruled that Marissa was entitled to inherit from Gorski's estate as a pretermitted child, but the court of appeals reversed and rendered judgment that Marissa was not entitled to share in Gorski's estate as a pretermitted child. *See id.* at 305. The court of appeals held that Marissa was "provided for through the child support payments and social security death benefits." *Id.* The court relied on the following reasoning:

> With regard to the social security death benefits, Gorski did dispose of his property through the payment of social security taxes and the result of that payment, the receipt of social security death benefits, took effect upon his death. New York has held that the provision of

a life insurance policy naming the child as beneficiary provides for the child by settlement. Social security benefits, like a life insurance policy, provide for a child upon death. In addition, Gorski's intention that the child support payments would continue after his death is evidence that he did not exclude Marissa from his will due to inadvertence or oversight. Knowing that the Estate would be bound to pay Marissa child support payments and that Marissa would receive social security death benefits, Gorski elected to exercise his power to dispose of his estate by exclusively leaving it to his sons.

*Id.*

The court in *Estate of Gorski* likened social-security death benefits to life insurance but without any analysis. With respect to life insurance, the insured both initiates the decision to purchase life insurance and decides the amount of the benefit and the identities of the beneficiaries. Social-security death benefits, however, are a product of federal law, which mandates the payment of social-security taxes. The social-security system provides for the payment of retirement benefits to the taxpayer during his or her own lifetime and, under certain circumstances relevant to this case, provides death benefits payable to children. *See generally* 42 U.S.C.A. § 402 (West Supp.2009) (governing "Old-age and survivors insurance benefit payments").

We conclude on the record before us that the Charles's payment of social-security taxes and his children's receipt of social-security death benefits do not conclusively establish that Charles otherwise provided for Austen and Katherine within the meaning of section 67(d)(2).

### 2. Child support

Richard also argues that the default child-support order rendered against Charles in April 2005, about sixteen months before his death, establishes that Charles provided for Austen and Katherine outside his will. He again relies on *Estate of Gorski* for support.

■ The child-support order in this case is distinguishable from the one in *Estate of Gorski.* First, this child-support order was rendered by default, while the *Estate of Gorski* order was consented to by the testator. *See* 993 S.W.2d at 300. Second, the *Estate of Gorski* order required the payment of child support even after the testator's death. *Id.* at 302–03. We conclude that the default order in this case did not require Charles's estate to continue to provide for Austen and Katherine by continuing to make child-support payments after his death. The order in this case provided that Charles's support obligation would terminate after the occurrence of any of several events including "the death of a child or the parent ordered to pay support." The order subsequently provided that "the provisions for child support in this order shall be an obligation of the estate of CHARLES F. HENDLER and shall not terminate on the death of CHARLES F. HENDLER." We must interpret the order to give effect to every part if possible. *See Constance v. Constance,* 544 S.W.2d 659, 660 (Tex.1976) ("Judgments, like other written instruments, are to be construed as a whole toward the end of harmonizing and giving effect to all the court has written."). We agree with Virginia that these provisions are reasonably harmonized by reading them to provide that no new child-support payments would come due after Charles died, but his estate would remain liable for any payments that were accrued and unpaid at the time of his death. Given this interpretation, these provisions are consistent and do not extend the obligation to

continue to make child-support payments after Charles's death.

We conclude that the rendition of the default child-support judgment against Charles does not conclusively establish that he otherwise provided for Austen and Katherine within the meaning of section 67(d)(2).

### 3. Life insurance

■■■ This leaves the parties' stipulation that Charles left a life-insurance policy that designated Virginia as the primary beneficiary and Austin as the contingent beneficiary. We conclude that this action by Charles satisfied every element of section 67(d)(2), being a disposition of property, "whether vested or contingent," for Austen's benefit that was outside Charles's will and intended to take effect at Charles's death. TEX. PROB.CODE ANN. § 67(d)(2). Virginia argues that the contingent nature of the disposition takes Charles's act out of section 67(d) because it shows that he did not intend for Austen to receive a benefit upon Charles's death. We reject her argument. Section 67(d) plainly states that a contingent disposition of property can qualify as "otherwise provid[ing] for" a pretermitted child. By naming Austen as a contingent life-insurance beneficiary, Charles demonstrated that he had thought about providing for Austen after his death, and thus that he did not leave Austen out of his testamentary planning because of accident or oversight. *See In re Faber's Estate*, 305 N.Y. 200, 111 N.E.2d 883, 884–87 (1953) (pretermitted child named as life-insurance beneficiary by testator could not take from estate under pretermitted-child statute).

We conclude that the parties' stipulation regarding Austen's status as a contingent life-insurance beneficiary conclusively establishes that he was "otherwise provided for" by Charles, and thus that he cannot take from Charles's estate under section 67(a).

### 4. Conclusion

The trial court correctly granted summary judgment that Charles otherwise provided for Austen outside of his will and that Austen was not entitled to take from Charles's estate even if he is a pretermitted child. The trial court erred, however, in ruling that Charles otherwise provided for Katherine, so we must reverse the summary judgment to that extent. Although Virginia sought summary judgment that Charles did not otherwise provide for Katherine outside of his will, she has not referred us to any summary-judgment evidence that would conclusively establish that fact. Thus, the trial court correctly denied her motion for summary judgment.

## IV. DISPOSITION

For the foregoing reasons, we reverse the trial court's May 13, 2010 order probating the handwritten note as a holographic codicil. We reverse the trial court's May 12, 2010 order to the extent the court ruled that the handwritten note was entitled to probate and ruled that Austen and Katherine are not pretermitted children. We also reverse that order to the extent the trial court ruled that Katherine was otherwise provided for under section 67(a) of the probate code. We affirm that order to the extent the trial court ruled as a matter of law that Austen was otherwise provided for under section 67(a). We remand the case for further proceedings consistent with this opinion.