Carole BULLOCK, Appellant,

v.

The AMERICAN HEART
ASSOCIATION,
Appellee.

No. 05–10–00847–CV.

Court of Appeals of Texas,
Dallas.

Jan. 31, 2012.

Rehearing Overruled March 12, 2012.

.

Richard A. Wagner, Attorney at Law, Bulverde, TX, for Appellant.

Gary R. Powell, Locke Liddell & Sapp, LLP, Dallas, TX, for Appellee.

Before Justices MOSELEY, FITZGERALD, and MARTIN RICHTER.

## OPINION

Opinion By Justice MARTIN RICHTER.

This case arises out of the breach of a separation agreement entered into between Carole Bullock ("Bullock") and the American Heart Association ("AHA") following the termination of Bullock's employment with the AHA. The trial court granted summary judgment in favor of AHA on all issues but attorney's fees, and following a bench trial on fees, awarded AHA its attorney's fees. On appeal, Bullock contends the trial court erred in granting AHA's motion for summary judgment and in denying her motion for summary judgment. Bullock also asserts the trial court erred in enforcing the jury waiver

set forth in the separation agreement and in quashing subpoenas directed to AHA's three most senior executives. Concluding Bullock's arguments are without merit, we affirm the trial court's judgment.

### BACKGROUND

On May 12, 2006, Bullock was discharged from her employment with AHA as part of a departmental reorganization that eliminated Bullock's job. Bullock was provided with a Separation and Release Agreement (the "Agreement") that she reviewed with her counsel before she signed and returned it to AHA two weeks later. Pursuant to the Agreement, three payments were to be deposited into Bullock's bank account beginning in May 2006. The required deposits were made, but AHA also mistakenly deposited five additional payments into Bullock's account. The additional deposits resulted in $17, 263.15 in overpayment to Bullock.

By letter dated November 28, 2006, AHA requested that Bullock return the amount it had overpaid, and offered to structure a repayment schedule. Bullock, responding through her counsel, refused to return the overpayments, claimed she was the victim of various unlawful employment practices, and demanded an additional $275,000.

AHA subsequently initiated this suit to recover the overpayments. During the course of the lawsuit, Bullock asserted various claims and counterclaims against AHA and several of its officers, and demanded a jury. On March 29, 2007, Bullock also filed a charge with the Equal Employment Opportunity Commission ("EEOC"), claiming AHA discriminated against her on the basis of her age. The EEOC dismissed the charge as untimely filed.

AHA moved to strike Bullock's jury demand and enforce the parties' contractual jury waiver as set forth in the Agreement, and the trial court granted the motion. Bullock subsequently issued deposition notices and subpoenas to three of AHA's highest ranking executives and a fourth person who was not employed by AHA at the time Bullock's employment terminated. AHA moved the quash the notices and subpoenas, and the trial court granted the motion.

AHA also moved for summary judgment, asserting there was no genuine issue of material fact concerning its claim for repayment of the funds inadvertently deposited in Bullock's account, and that all of Bullock's claims and defenses were barred by waiver and release as a result of the Agreement. AHA further asserted that it was entitled to a no-evidence summary judgment on all of Bullock's affirmative defenses. Bullock responded to AHA's motion for summary judgment, and several months later, filed her own motion for summary judgment. Bullock's motion, however, was never set for a hearing. The trial court granted AHA's motion for summary judgment on all issues but attorney's fees. After a trial to the court on the remaining issue of fees, the trial court awarded AHA its attorney's fees and signed a final judgment in favor of AHA. This appeal followed.

### ANALYSIS

*Legality of the Agreement.*

In her seventh issue, Bullock asserts the trial court erred in denying her motion for summary judgment because it is based on an "illegal agreement that purports to release her Texas labor law rights, worker's compensation benefits, Title IV discrimination rights and a valuable pension and cherished job." This issue has not been properly presented for our review.

■ The Texas Rules of Appellate Procedure control the required contents and organization for an appellant's brief. *See* TEX.R.APP. P. 38.1. One of those requirements is that an appellant's brief must concisely state all issues or points presented for review. TEX.R.APP. P. 38.1(e). The appellant's brief must also contain a clear and concise argument, including appropriate citations to authority and the record. *See* TEX.R.APP. P. 38.1(h). Failure to cite legal authority or provide substantive analysis of the legal issue presented results in waiver of the complaint. *See Kang v. Hyundai Corp.*, 992 S.W.2d 499, 503 (Tex. App.-Dallas 1999, no pet.); *Leyva v. Leyva*, 960 S.W.2d 732, 734 (Tex.App.-El Paso 1997, no writ).

■ Similarly, failure to provide citations to the record also results in waiver of the issue on appeal. *See* TEX.R.APP. P. 38.1(i); *see also Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex.1994) (appellate court has discretion to waive error due to inadequate briefing); *Radenovich v. Eric D. Fein, P.C. & Assocs.*, 198 S.W.3d 858, 861 (Tex.App.-Dallas 2006, no pet.) (same). It is appellant's burden to discuss her assertions of error. We have no duty—or even right—to perform an independent review of the record and applicable law to determine whether there was error. *See Green v. Kaposta*, 152 S.W.3d 839, 841 (Tex.App.-Dallas 2005, no pet.); *Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex.App.-El Paso 2007, no pet.).

Bullock's briefing on this issue consists of excerpts from various state and federal regulations and conclusory allegations. There are no citations to the record or references to summary judgment evidence. Indeed, Bullock fails to demonstrate that the issue was even raised in the court below. There is also no legal analysis or discussion of the referenced regulations

and how they might relate to the multiple assertions of error. Because Bullock has failed to comply with TEX.R.APP. P. 38, she has waived her issue on appeal. *See Devine v. Dallas Cnty.*, 130 S.W.3d 512, 513–14 (Tex.App.-Dallas 2004, no pet.) (holding failure to adequately brief waives issue on appeal). Bullock's seventh issue is overruled.

Having determined that the question concerning the legality of the Agreement has not been preserved for our review, we now turn to those issues pertaining to the application of the Agreement.

### *Waiver of Jury Trial.*

In her first issue, Bullock asserts the trial court erred in striking her request for a jury trial. Although the Agreement provides for waiver of a jury trial in the event of a dispute between the parties, Bullock maintains AHA failed to establish the waiver was knowing and voluntary. Bullock's argument is premised on the assumption that a party seeking to enforce a contractual jury waiver is charged with the burden to establish the waiver was knowing, voluntary, and "made with full awareness of the legal consequences." The Texas Supreme Court, however, has held otherwise. *See In re Bank of America, N.A.*, 278 S.W.3d 342, 346 (Tex.2009).

■ In *Bank of America*, the court expressly stated that there is no presumption against jury waivers that places the burden on the party seeking enforcement to prove the waiver was executed knowingly and voluntarily. *Id.* A conspicuous jury waiver provision is prima facie evidence of a knowing and voluntary waiver, and shifts the burden to the opposing party to rebut it. *In re General Elec. Capital Corp.*, 203 S.W.3d 314, 316 (Tex.2006).

■ To the extent Bullock's argument can be construed to assert the waiver was

not sufficiently conspicuous, we disagree.[1] The jury waiver provision is contained in a separate paragraph of the Agreement, and appears in boldface type. The introductory heading entitled "Waiver of Jury Trial" is underlined, and clearly delineates the subject matter.[2] The waiver itself is not excessively verbose, nor is it buried in unrelated verbiage; rather, it is the sole subject of the paragraph. Moreover, Bullock had two weeks to review the Agreement, which in its entirety, is only six and a half pages long. Bullock admitted that she consulted with her attorney before she signed the Agreement and returned it to AHA. Texas courts have always presumed that a party who signs a contract knows its contents. *In re Bank One, N.A.*, 216 S.W.3d 825, 826 (Tex.2007) (orig. proceeding). Further, Texas courts have consistently held that a "party's signature on a written contract is strong evidence that the party unconditionally assented to its terms." *In re ReadyOne Indus., Inc.*, 294 S.W.3d 764, 769 (Tex.App.-El Paso 2009, no pet.).

Because the waiver was conspicuous, Bullock was charged with the burden of establishing that it was not knowing or voluntary. But Bullock does not address whether she endeavored to meet this burden. Therefore, on this record, we conclude the trial court did not err in enforcing the contractual jury waiver. Bullock's first issue is overruled.

### Apex Depositions.

During the pendency of the lawsuit, Bullock sought to obtain the deposition of Cass Wheeler ("Wheeler"), AHA's chief executive officer, Nancy Brown ("Brown"), AHA's Chief Operating Officer, and David Livingston, ("Livingston"), AHA's General Counsel. Bullock also sought to depose an AHA employee who was not employed at the time Bullock's employment terminated.[3] AHA moved to quash the subpoenas directed to these individuals, and the trial court granted the motion. In her second issue, Bullock contends the trial court erred in quashing these subpoenas.

▮ Generally, the scope of discovery is within the trial court's discretion. *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex.1998); *see also In re Alcatel USA, Inc.*, 11 S.W.3d 173, 174 (Tex.2000) (applying abuse of discretion standard to apex determination). An "apex deposition" is the deposition of a corporate officer who is at the top of the corporate hierarchy. *Crown Central Petroleum Corp. v. Garcia*, 904 S.W.2d 125, 126 (Tex.1995). In ordering or preventing an apex deposition, a trial court must apply the guidelines set out in *Crown Central*. *In re Daisy Mfg. Co.*, 17 S.W.3d 654, 656 (Tex.2000). Under *Crown Central*, a corporation may shield a high-level corporate official from a deposition by filing an affidavit by the official "denying any knowledge of relevant facts." *Crown Central*, 904 S.W.2d at 128. The trial court determines the motion by first considering whether the proponent of the deposition has "arguably shown that the official has any unique or superior person-

---

1. Bullock also fails to identify whether this issue was raised in the court below. *See* Tex.R.App. P. 33.1.

2. The paragraph provides: "In the event that any dispute arising from or related to this Agreement of your employment with AHA results in a lawsuit, both AHA and you mutually waive any right each may otherwise have for the jury to decide the issues in the lawsuit ... AHA and you irrevocably agree that all issues

in any such lawsuit shall be decided by a judge rather than a jury."

3. Bullock's argument concerning this employee consists only of a statement that AHA did not file any "protective affidavits" concerning the employee. This aspect of Bullock's argument is waived because it is inadequately briefed. *See* Tex.R.App. P. 38.

al knowledge of discoverable information." *Id.* If the proponent fails to make such a showing, "the trial court should grant the motion for protective order and first require the party seeking the deposition to attempt to obtain the discovery through less intrusive methods." *Id.* These methods could include taking the depositions of lower-level employees or directing discovery requests to the corporation itself. *Id.* If, after making a good faith effort to obtain the discovery through less intrusive means, the proponent shows that (1) there is a reasonable indication that the official's deposition is calculated to lead to the discovery of admissible evidence and (2) that less intrusive methods of discovery are insufficient, the trial court should modify or vacate the protective order. *Id.*

■ In support of its motion to quash, AHA filed affidavits from Wheeler, Brown, and Livingston. The affidavits state that these individuals were not directly involved in making the decision to discharge Bullock, and had no superior personal knowledge regarding the issues in the case. The affidavits further stated that none of these individuals were involved in Bullock's execution of the Agreement or the subsequent payments to Bullock, nor were they involved in the events giving rise to Bullock's counterclaims. AHA further objected to the subpoena directed to Livingston because, as AHA's General Counsel, the information he had about the case was protected from discovery as work product or attorney-client communication, and Bullock failed to demonstrate there was no

alternative means to obtain relevant information.[4]

In addition, Brown's affidavit identifies two AHA employees as the sources for Brown's information about the case. AHA's motion states that AHA made both of these employees available for Bullock to depose. While Bullock did depose one of the employees, the deposition was completed in nineteen minutes. The other employee appeared for a scheduled deposition, but Bullock decided not to depose her.

■ Although Bullock now complains the trial court erred in quashing the subpoenas, she offers nothing to suggest or otherwise establish she demonstrated that these apex individuals had unique or personal knowledge of discoverable information. *See Alcatel,* 11 S.W.3d at 179. In fact, the record before us does not reflect whether Bullock responded to the motion to quash, and there is no record of a hearing. In the absence of such proof, we cannot conclude the trial court erred in quashing the subpoenas and depositions. Bullock's second issue is overruled.

### *Summary Judgment.*

In her fourth, fifth, and sixth issues, Bullock complains about the summary judgment entered in favor of AHA. Specifically, Bullock claims "there were material fact issues" pertaining to her claims of fraud, constructive discharge, age discrimination, estoppel and duress. Finally, Bullock asserts the trial court erred in awarding AHA judgment for $45,149.53.[5]

---

4. We are deeply troubled by Bullock's unsubstantiated invective suggesting that "[t]he AHA is probably hiding counsel because he gave them advice on how to break the law." Attorneys owe opposing counsel a duty of courtesy, and should not abuse the opposing party or engage in offensive conduct. *See Dondi Properties Corp. v. Commerce Sav. and*

*Loan Ass'n,* 121 F.R.D. 284, 287–88 (N.D.Tex. 1988).

5. In light of our obligation to liberally construe briefs, we address Bullock's arguments to the extent they are adequately briefed and we understand them. To the extent that any

We review the trial court's grant of a summary judgment de novo. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex.2009) (per curiam)(citing *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex.2007)). We consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex.2006). We must affirm the summary judgment if any of the movant's theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex.2003). When a plaintiff seeks summary judgment on his own claim, he must conclusively establish every necessary element in his favor. *In re Estate of Hendler*, 316 S.W.3d 703, 707 (Tex.App.-Dallas 2010, no pet.). A matter is conclusively established by the evidence if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Id.* We must take the evidence favorable to the nonmovant as true and draw every reasonable inference from the evidence in favor of the nonmovant. *Id.* To prove entitlement to summary judgment on a counterclaim, the plaintiff must conclusively negate at least one element of the counterclaim or plead and conclusively establish each element of an affirmative defense to the counterclaim. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995). If the defendant wishes to assert an affirmative defense to defeat summary judgment on the plaintiff's claim, he must urge the defense in his response and present sufficient evidence to create a fact issue on each element.

*See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex.1984); *Jones v. Tex. Pac. Indem. Co.*, 853 S.W.2d 791, 795 (Tex. App.-Dallas 1993, no writ).

The summary judgment evidence establishes that Bullock executed the Agreement and returned it to AHA after she reviewed it with her counsel. The Agreement provides for Bullock's general release of claims against AHA and the right to any monetary recovery, and states in pertinent part:

> This General Release includes, but is not limited to any claim or demand based on any federal, state, or local statutory or common law constitutional provision that applies or is asserted to apply, directly or indirectly, to the formation, continuation, or termination of your employment relationship with AHA, including but not limited to any claims alleging violations of . . . the ADEA, and any claims growing out of any legal restrictions, contractual or otherwise, on AHA's right to terminate the employment of its employees.

Bullock does not identify any summary judgment evidence that may have been adduced to controvert the fact that her claims against AHA were released pursuant to the Agreement. In addition, the summary judgment evidence establishes that Bullock's EEOC claim was not timely asserted. And assuming *arguendo* that one or more of Bullock's claims was not released, Bullock fails to identify any summary judgment evidence to create a fact issue on any element of any of her claims or defenses.

Bullock also complains about the amount of the judgment awarded to AHA. The $45, 149.53 award has two components; the $17,263.15 awarded for overpayments and the $27,886.38 awarded as recovery of Bullock's special separation

of her arguments are unintelligible or inade- quately briefed, they are overruled.

payment. With regard to the $17,263.15, the undisputed evidence establishes that AHA paid this amount to Bullock and she was not entitled to receive it. On appeal, Bullock summarily asserts that she is not required to repay these funds because of the "voluntary payment rule." But Bullock fails to identify whether this argument was timely and properly asserted in the court below, and most important, whether there is any summary judgment evidence in the record to support her argument. *See* Tex.R.App. P. 38.

Bullock's assertions concerning the $27,886.38 portion of the award are similarly deficient. The $27,886.38 represents the amount of the special separation payment made to Bullock upon termination of her employment with AHA. In the court below, AHA claimed it was entitled to recover the separation payment pursuant to a repayment clause in the Agreement. In this regard, the Agreement, which is part of the uncontroverted summary judgment evidence provides:

> In the event that you fail to comply with any of your obligations as set forth in this Agreement ... you may be required to repay the special separation payment provided to you under this Agreement.

The uncontroverted summary judgment evidence also reflects that Bullock asserted claims against AHA and several of its executives. Bullock does not dispute that her assertion of claims against AHA triggers the repayment clause. Instead, she argues the repayment clause is unenforceable because it violates "the anti-retaliation statute," and the "return of consideration is unlawful." Bullock further asserts that AHA failed to comply with the notice provisions of the Agreement. But once again, Bullock wholly fails to comply with the rules of appellate procedure, and such failure results in the waiver of these issues on appeal. *See* Tex.R.App. P. 38; *Devine,*

130 S.W.3d at 513–14. On the record before us, we cannot conclude the trial court erred in determining Bullock's claims against AHA were released and AHA was entitled to recover both the amount AHA paid to Bullock in error and the amount of the separation payment. Bullock's fourth, fifth, and sixth issues are overruled.

### *Attorney's Fees.*

Finally, Bullock complains about the trial court's award of attorney's fees to AHA. The substance of her argument, however, is difficult to discern. Bullock's summary of issues frames her complaint as a failure to segregate the fees. But there is no discussion of this contention in the body of the brief. Instead, in the body of the brief, Bullock asserts AHA is not entitled to recover fees under Chapter 38 because it failed to "plead facts supporting a breach of contract claim." Bullock then concedes AHA pled for the recovery of fees under Chapter 38, but claims AHA did not specify the section of the contract that was breached. In conclusion, Bullock contends that AHA's pleading, which "relies on section 12 breach of agreement is invalid under anti-retaliatory laws."

Even under an expansive application of the rule requiring liberal construction of briefs, regardless of how we construe the issue(s), Bullock presents nothing for our review. Although the issue of attorney's fees was tried to the court, Bullock failed to request or file a reporter's record. When the appellant fails to bring forward a statement of facts, the appellate court will presume the statement of facts contained all matters supporting the trial court's judgment. *See, e.g., Christiansen v. Prezelski,* 782 S.W.2d 842, 843 (Tex.1990); *Willms v. Americas Tire Co., Inc.,* 190 S.W.3d 796, 803 (Tex. App.-Dallas 2006, pet. denied); *Favaloro v. Comm'n for Lawyer Discipline,* 994 S.W.2d 815, 821 (Tex.App.-Dallas 1999, pet. stricken). Points of error dependent

on the state of the evidence cannot be reviewed without a complete record, including a statement of facts. *Favaloro,* 994 S.W.2d at 821. If the appellant fails to bring forward a complete record, the court will conclude appellant has waived the points of error dependent on the state of the evidence. *Id.*

Moreover, Bullock concedes AHA pleaded for the recovery of attorney's fees under Chapter 38 by reason of Bullock's breach of contract. We have already concluded the trial court did not err in determining Bullock breached the Agreement by asserting claims against AHA.[6] Therefore, we cannot conclude the trial court erred in awarding AHA its attorney's fees for Bullock's breach of contract. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 38.001 (West 2008). Bullock's third issue is overruled.

### CONCLUSION

Having resolved all of Bullock's issues against her, we affirm the trial court's judgment.

---

6. We have also concluded Bullock's retaliation argument(s) have been waived on appeal.