# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-24-00528-CV

**Grant Hanson, Appellant**

**v.**

**Tara Louise Nugent, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 1 OF WILLIAMSON COUNTY
### NO. 23-1352-FC1, THE HONORABLE BRANDY HALLFORD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an appeal in a SAPCR involving an original child-custody determination. *See* Tex. Fam. Code §§ 153.001–.709; *In re C.J.C.*, 603 S.W.3d 804, 807–08 (Tex. 2020). Grant Hanson, proceeding *pro se*, appeals the trial court's final Order in Suit Affecting the Parent–Child Relationship, contending that evidence was improperly excluded, his custody rights should not have been conditioned on his needing to produce clean drug-test results, he should have been named as a managing conservator for his child, and that it was not in his child's best interest that Hanson have a possession order that granted him fewer rights than would an expanded standard possession order. We affirm.

## I

Hanson and appellee Tara Nugent met online and dated during the COVID-19 pandemic. By spring 2022, she ended their romantic relationship, but the two still saw each other

from time to time, and in late 2022 she learned that she was pregnant with G.W.H. (Child). Even so, Nugent was firm in her decision not to continue a romantic relationship. She wanted to have a sober household for her future child, but Hanson used illegal substances, including marijuana and mushrooms, often mixing one or more of them with alcohol, and refused to stop. Both at and after Child's birth, Hanson's drug use remained a topic of contention between him and Nugent. He arrived at the birth and at later doctor visits for Child obviously under the influence of marijuana.

His drug use remained a theme after this suit was filed. Nugent initiated the suit to establish conservatorship and possession orders and Hanson's parentage of Child. The trial court issued temporary orders that granted Nugent temporary sole managing conservatorship. They also provided "that due to the age of the child and the father's substance use and abuse, it is in the child's best interest to" require Hanson's visitations to be supervised, require him to abstain from all illegal drugs, and test him for drugs before each supervised visit.

Final trial was to the bench, with Hanson's drug use again front and center. Nugent put forward her testimony and the testimony of the professional who oversaw the supervised visits. Nugent offered evidence about the difficulties that Hanson's drug use had caused and about how Child was diagnosed with a breathing condition that required his caregiver to be regularly alert to his condition. In response, Hanson sought, among other things, to offer evidence of a prescription that he had been given for low-dose THC use. Child was just over one year old at the time of trial.

Ultimately, the trial court rendered its final order, awarding Nugent sole managing conservatorship of Child and Hanson possessory conservatorship. The order imposes a tiered, step-up possession schedule on Hanson because, the court found, "based on the credible evidence and testimony presented . . . there is a history and pattern of drug use by" Hanson. The possession schedule's final, fourth tier awards the possession rights provided for by the standard possession

2

order. But to progress upward from one tier to the next, Hanson must provide certain clean drug-test results. Tier one gives him supervised possession the first, third, and fifth Saturdays and Sundays of each month, beginning at 10:00 a.m. and ending at 2:00 p.m. each day. He could progress to tier two after presenting a hair-follicle-test result that goes back 90 days and that shows that he is negative for all illegal substances, including marijuana. Tier two expands his supervised-possession rights to 10:00 a.m. to 4:00 p.m. on the Saturdays and Sundays awarded. To get to tier three, Hanson needs to present hair-follicle-test results that show 180 consecutive days of negative results. Then to get to tier four, Hanson needs to have progressed through tier three, and Child needs to have turned three years old. Any positive test result during tiers two, three, or four—the court's final order otherwise granted Nugent rights to require drug-testing by Hanson—resets Hanson's possession rights to tier one.

He now appeals the trial court's final order.

**II**

The issues in this appeal are reviewed for an abuse of discretion. *See Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Doyle v. Doyle*, 955 S.W.2d 478, 479 (Tex. App.—Austin 1997, no pet.). The test is whether the trial court acted without reference to any guiding rules or principles, in other words, whether the act was arbitrary or unreasonable. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam). An abuse of discretion does not occur when some evidence of a substantive and probative character supports the trial court's decision. *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied).

When in this context an appellant challenges the legal or factual sufficiency of the evidence, the sufficiency challenges are not independent grounds of error but are relevant factors

3

in assessing whether the trial court abused its discretion. *Id.* We engage in a two-pronged inquiry, deciding (1) whether the trial court had sufficient information on which to exercise its discretion and (2) whether the court erred in its application of discretion. *Id.* at 588. Traditional sufficiency review comes into play under the first question. *Id.* We then proceed to decide whether, based on the evidence, the trial court made a reasonable decision, that is, that the court's decision was neither arbitrary nor unreasonable. *Id.*

## III

In one of his appellate issues, Hanson contends that the trial court abused its discretion by excluding evidence about what he says is his disability and medication-assistance recovery. He ties these matters to what he terms his "legitimate THC prescription under the Texas Compassionate Use Program."

Yet nothing in his briefing tells us what excluded evidence he is talking about, whether testimony or exhibits. If exhibits, not only are the exhibits absent from the appellate record but Hanson's briefing also offers no arguments concerning the objections that Nugent made at trial to his proffered exhibits. He gives us no legal analysis about why whatever evidence purportedly excluded should not have been, except saying that the trial court's exclusion of evidence "violat[ed] ADA protections and unfairly stigmatiz[ed]" him. But this assertion lacks any supporting legal argument or any indication about whether or how the Americans with Disabilities Act of 1990, *see* Pub. L. No. 101-336, § 1, 104 Stat. 327 *et seq.*, operates on the Rules of Evidence to require admission of evidence that otherwise may be excluded. Because we have "no duty—or even right—to perform an independent review of the record and applicable law to determine whether there was error," and because Hanson has failed to cite legal authority and

4

provide substantive analysis of the legal issues, Hanson's evidence-exclusion issue is forfeited. *See J.W. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-23-00151-CV, 2023 WL 5208035, at *2 (Tex. App.—Austin Aug. 15, 2023, pet. denied) (mem. op.) (quoting *Bullock v. American Heart Ass'n*, 360 S.W.3d 661, 665 (Tex. App.—Dallas 2012, pet. denied)); *Rader v. Berry*, No. 03-11-00810-CV, 2013 WL 6665075, at *1 (Tex. App.—Austin Dec. 11, 2013, no pet.) (mem. op.) (quoting *Bullock*, 360 S.W.3d at 665); *see also Borusan Mannesmann Pipe US, Inc. v. Hunting Energy Servs., LLC*, 716 S.W.3d 572, 574 n.1 (Tex. 2025) (inadequate briefing gives rise to "forfeiture" (citing *Bertucci v. Watkins*, 709 S.W.3d 534, 541 n.5 (Tex. 2025))).

**IV**

Three of Hanson's appellate issues concern the trial court's appointment of Nugent as Child's sole managing conservator and its order and related findings that Hanson should not be appointed as a managing conservator. He argues that the court (a) abused its discretion by denying joint managing conservatorship "based on unfounded stigmatization of [his] medical treatment and disabilities, lacking clear and convincing evidence of unfitness"; (b) "fail[ed] to provide a factual basis to support claims of parental unfitness, instead relying on irrelevant and stigmatizing factors"; and (c) erred by "grant[ing] sole managing conservatorship to [Nugent], disregarding [the] Texas Family Code's preference for joint conservatorship absent demonstrable unfitness." He cites Family Code section 153.131 to support his arguments and says, "The trial court's reliance on a legal prescription is insufficient grounds for restricting [his] rights under Texas Family Code

standards and [t]he Americans with Disabilities Act." We construe Hanson's arguments as a legal-sufficiency attack on the trial court's finding under Section 153.131(a).[1]

Family Code chapter 153 provides some limits on a court's power to craft original conservatorship orders. Among those limits is the rebuttable presumption that parents should be appointed as managing conservators for their children "unless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development." *See* Tex. Fam. Code § 153.131(a). This statute requires the opposing party "to offer evidence of specific actions or omissions of the parent that demonstrate an award of custody to the parent would result in physical or emotional harm to the child." *See Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990). The opposing party's burden of proof is a preponderance of the evidence. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). Types of parental conduct that may constitute significant impairment include, but are not limited to, physical abuse, severe neglect, drug or alcohol abuse, abandonment, bad judgment, or a history of mental disorders. *Udall v. Minns*, 730 S.W.3d 704, 728 (Tex. App.—Austin 2026, pet. denied).

Hanson's arguments suggest that he believes that the trial court rendered its conservatorship order based solely on Hanson's admitted marijuana use. But there was more in the evidence relevant under Section 153.131(a) than mere marijuana use. Nugent offered

---

[1] His arguments again lack any clarity or supporting authorities concerning how the Americans with Disabilities Act applies in this context. *See J.W. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-23-00151-CV, 2023 WL 5208035, at *2 (Tex. App.—Austin Aug. 15, 2023, pet. denied) (mem. op.) (appellate courts lack any duty or right "to perform an independent review of the . . . applicable law to determine whether there was error" (quoting *Bullock v. American Heart Ass'n*, 360 S.W.3d 661, 665 (Tex. App.—Dallas 2012, pet. denied))).

evidence, mostly in the form of her testimony or the testimony of the board-certified human-services practitioner who has overseen Hanson's supervised visitations, of the following:

- Nugent invited Hanson to attend Child's birth but asked him not to come to the hospital if he was under the influence of marijuana. He arrived at the hospital visibly under the influence and giving off a noticeable odor of marijuana.

- He has missed many of Child's doctor visits during the first year of Child's life. For the visits that he did attend, he was noticeably under the influence of marijuana, and other people noticed its odor on him. During one visit for an ultrasound, he was so altered by marijuana that he did not realize that clinic staff were repeatedly calling his name. During a later emergency-room admission for Child, he first arrived at the hospital two days after Child had been admitted and was so under the influence that he could barely function and slept on a couch until he left to go home.

- Child has needed to be hospitalized for breathing problems and has been diagnosed with a respiratory disease and low muscle tone. His respiratory problems require near-constant alert and monitoring. But Hanson is often asleep or sluggish due to drug use, including during supervised visitations. The visitation supervisor testified that it is not a good idea for people to be under the influence of illegal substances while caring for a child.

- Hanson grows marijuana in a closet at his home and has used the help of his minor daughter from a prior relationship in growing the plants. He uses mushrooms that can cause hallucinations and personality changes. And he uses testosterone that he buys from a friend rather than via doctor prescription.

- He has tested positive for levels of THC that should not be achievable if he were using only the dosage that he says has been prescribed for him by an out-of-state doctor.

- Even though the trial court's temporary orders in the suit required clean drug-test results from Hanson before periods of supervised visitation, many of his drug-test results were positive for THC and benzodiazepine.[2]

---

[2] Hanson in his reply brief offers reasons for why Nugent's testimony should be disbelieved, but these arguments ultimately attack the trial court's assessment of Nugent's credibility and the weight to be given to her testimony. *See Udall v. Minns*, 730 S.W.3d 704, 725 (Tex. App.—Austin 2026, pet. denied). The trial court impliedly credited Nugent's version of the

7

We conclude that this evidence is legally sufficient to support the trial court's finding under Section 153.131(a) that the presumption of naming Hanson as a managing conservator was rebutted and that the trial court did not abuse its discretion by making an appropriate order based on that finding. *See id.* (drug abuse and bad judgment); *C.S.D. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-23-00432-CV, 2024 WL 124415, at \*14–15 (Tex. App.—Austin Jan. 11, 2024, no pet.) (mem. op.) (positive drug tests during suit when clean tests were required, associated poor decision-making, and occurrences during supervised visitations showing that parent would have trouble keeping child safe); *In re A.M.T.*, 592 S.W.3d 974, 978 (Tex. App.—San Antonio 2019, pet. denied) (history of drug use). We thus overrule these three appellate issues.

## V

In another appellate issue, Hanson contends that the trial court abused its discretion by conditioning his tiered possession rights on drug testing. He says that the court imposed the drug-testing conditions "based solely on [his] low-dose THC prescription under the Texas Compassionate Use Program, without evidence suggesting unfitness as a parent," and that "Texas Occupation[s] Code Section 169.001 protects the rights of individuals legally prescribed low-dose THC."[3] These statements mark the full extent of the legal analysis that Hanson provides in his briefing on this issue.

---

events instead of Hanson's, and it is a fundamental limitation on our power that we must defer to such assessments by a factfinder. *Id.*

[3] Besides simply asserting that he qualifies to use marijuana under the Texas Compassionate Use Act, Hanson in his opening brief makes no argument that the trial court erred by ruling that he does not qualify under the statute. Then in his reply brief, he again asserts that he qualifies under the Act, pointing to certain testimony of his and exhibits admitted at trial, but he cites no authorities regarding what must be shown to prove that a person qualifies under the Act. *See J.W.*, 2023 WL 5208035, at \*2 (appellate courts lack any duty or right "to perform an

8

His reliance on Occupations Code section 169.001 is misplaced—that statute simply defines terms to be used elsewhere in the same statutory chapter. He otherwise offers no authorities to support an argument that the statutes of the Texas Compassionate Use Act restrict a court's power to condition possession on negative drug-test results. *Cf.* Tex. Health & Safety Code §§ 487.001–.256; Tex. Occ. Code §§ 169.001–.006. Further, some evidence before the trial court showed that Hanson uses illegal drugs besides marijuana. The trial court's order thus was not "based solely" on marijuana use. We overrule this issue. *See Schneider v. Schneider*, No. 01-22-00774-CV, 2024 WL 3349082, at *7 (Tex. App.—Houston [1st Dist.] July 9, 2024, no pet.) (mem. op.) ("Under appropriate circumstances, a trial court does not abuse its discretion by ordering future drug testing of a parent if it is in the child's best interest.").

## VI

Hanson's final appellate issue concerns the possession schedule assigned to him as possessory conservator of Child. Hanson contends that the trial court should not have denied him an expanded-standard-possession schedule because he had "achiev[ed] higher visitation tiers" in the step-up schedule that the court imposed. He says that the possession schedule "contraven[es] Texas Family Code Section 153.193, which requires denial of access to be based on clear, convincing evidence of harm to the child." We construe Hanson's arguments as a legal- and factual-sufficiency attack on the finding made against him under Section 153.193.

Section 153.193 provides, "The terms of an order that denies possession of a child to a parent or imposes restrictions or limitations on a parent's right to possession of or access to a

---

independent review of the . . . applicable law to determine whether there was error" (quoting *Bullock*, 360 S.W.3d at 665).

child may not exceed those that are required to protect the best interest of the child." The burden of proof at trial to support a finding that an order restricting possession is in the child's best interest is simply a preponderance of the evidence. *See In re L.M.M.*, No. 03-04-00452-CV, 2005 WL 2094758, at \*9–12 (Tex. App.—Austin Aug. 31, 2005, no pet.) (mem. op.); *id.* at \*19–20 (Puryear, J., concurring); *In re C.E.*, No. 02-22-00285-CV, 2025 WL 1203188, at \*16 (Tex. App.—Fort Worth Apr. 24, 2025, pet. denied) (mem. op.).

The evidence that we recounted above under Hanson's conservatorship issues also constitutes legally sufficient evidence to support the best-interest finding against him under Section 153.193. *See In re J.J.R.S.*, 627 S.W.3d 211, 221 (Tex. 2021) (evidence that minor children in home could access drug paraphernalia helped to support finding that order restricting parent's visitation rights was in children's best interest); *Harris v. True*, No. 03-25-00127-CV, 2025 WL 2941954, at \*10 (Tex. App.—Austin Oct. 17, 2025, no pet.) (mem. op.) (evidence of history of drug abuse helped to support finding that deviation from standard possession order was in child's best interest), *judgm't vacated in part on other grounds*, 2025 WL 3481339 (Tex. App.—Austin Dec. 4, 2025, no pet.) (mem. op.); *In re Z.D.*, No. 02-25-00114-CV, 2025 WL 2177389, at \*7 (Tex. App.—Fort Worth July 31, 2025, pet. denied) (mem. op.) ("[G]iven the danger that a parent's drug usage might pose to a child, we cannot say that the supervised-visitation restriction exceeded what was required to protect Aaron's best interest." (citing Tex. Fam. Code § 153.193)); *Warner v. Troutman*, No. 01-23-00587-CV, 2024 WL 3349097, at \*13 (Tex. App.—Houston [1st Dist.] July 9, 2024, no pet.) (mem. op.) (evidence that parent "exercised poor judgment in caring for her young, vulnerable children" supported Section 153.193 finding).

As for factual sufficiency, the only matter that Hanson points to in his favor is that he purportedly has advanced into the higher tiers of the possession order, though which ones

exactly he does not say. In any event, he points to no evidence to support that assertion—the tiered possession order at issue was not imposed until after trial, and the only other portion of the reporter's record besides the record of trial concerns a hearing at which no evidence was presented. Because Hanson points to no evidence in his favor, and because he identifies no authorities besides the statute to support his position, *see Gordon v. Martin*, No. 03-19-00241-CV, 2020 WL 1908316, at \*5 (Tex. App.—Austin Apr. 17, 2020, no pet.) (mem. op.) ("Nor does he point us to any cases supporting his argument."), we conclude that the evidence was factually sufficient under Section 153.193 to support the trial court's possession order and that the order was not an abuse of discretion. We overrule this remaining appellate issue.

\*     \*     \*

We affirm the trial court's final order. All pending motions are dismissed as moot.

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Kelly and Ellis

Affirmed

Filed:   June 18, 2026

11