**Myron Anna EVANS, Appellant,**

v.

**Carl MAY, Appellee.**

**No. 01–95–01026–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

April 11, 1996.

Rehearing Overruled July 3, 1996.

---

Carnegie H. Mims, Jr., Houston, for Appellant.

Debra Jo Catlett, Houston, for Appellee.

Before SCHNEIDER, C.J., and TAFT and ANDELL, JJ.

## OPINION

TAFT, Justice.

This is a case involving a will contest between the decedent's sister and the decedent's "lifemate" who is the executor and sole beneficiary of the decedent's estate. The primary issues we address are: (1) whether an executed will, that was torn up, then taped back together, with a writing signed by the decedent on each page stating another person had torn the will and it was still in force, was revoked; and (2) whether appellee's 30–year relationship with the decedent constituted undue influence as a matter of law. We affirm the trial court's admission of the will to probate.

### Facts

The decedent, Jack W. Knickerbocker, executed his will with all the formalities required by law on February 18, 1980. He appointed 'appellee, Carl May (decedent's "lifemate"), as independent executor and appellant, Myron Anna Evans, his sister, as alternate independent executrix. May was the sole beneficiary under the will. On February 23, 1980, May was drinking when he fought with the decedent, resulting in May tearing up the original will. The decedent pieced the will back together, and wrote, signed, and dated a message on each page of the will stating, "To whome [sic] it may concern: Carl Robbins May tore this original up when drinking Feb. 23rd 1980, but this will is still effective and in force. [/s/] Jack W. Knickerbocker."

The parties stipulated to the authenticity of the decedent's signature on page two of the will and in the margin of each page of the will. At trial, the attorney who prepared the

will and a handwriting expert testified that the handwriting on the side of each page of the will was that of the decedent. By admitting the will to probate, the probate court determined that the handwriting was not a forgery and the handwriting did not constitute a codicil to the will.

## Revocation of the Will

■ Evans' first point of error claims the trial court erred in admitting decedent's will to probate, because the will was revoked when the decedent tore up the original will.

■ In a trial to the court, the trial court's judgment must be upheld if supported by the evidence. *In re Estate of Johnson*, 781 S.W.2d 390, 391–92 (Tex.App.— Houston [1st Dist.] 1989, writ denied). Evans correctly states the rule that if a will is found in the possession of the testator at his death, in a "state of mutilation, obliteration, or cancellation" representing a sufficient act of revocation within the meaning of the statute, then it is presumed, in absence of evidence to the contrary, that the testator destroyed it with the intention of revoking it. *Simpson v. Neely*, 221 S.W.2d 303, 312 (Tex. Civ.App.—Waco 1949, writ ref'd).

Here, the will was found not in a state of mutilation, but taped together. There is also evidence rebutting the presumption of intent to revoke, *i.e.*, the decedent's handwritten message. We conclude that the evidence sufficiently supports the trial court's implied finding that the will had not been revoked, either because the presumption of intent to revoke did not arise or because it was rebutted.

Accordingly, we overrule Evans' first point of error.

## Dead Man's Statute

■ Evans' second point of error contends the trial court erred in admitting the decedent's will to probate because the evidence of nonrevocation violated the Dead Man's Statute and was self-serving, unverified, and unauthenticated. The Dead Man's Statute prohibits admission of a decedent's words or actions through a third party who could benefit. *See* Tex.R.Civ.Evid. 601(b).

Evans complains May, as executor, should not have been allowed to testify concerning any communications with the decedent. Evans also claims that the spelling of the word "whom" as "whome," casts suspicion on the authenticity of the written statement.

In regard to the spelling of the word "whom" casting suspicion on authenticity, we hold that this merely created a fact issue for the trial court to resolve. As for inadmissibility pursuant to the Dead Man's Statute, no such objection was made at trial. Any complaint as to the admission of the evidence was thus waived. *See* Tex.R.App.P. 52; *Tuttle v. Simpson*, 735 S.W.2d 539, 542 (Tex.App.— Texarkana 1987, no writ).

Therefore, we overrule Evans' second point of error.

## Undue Influence

■ Evans' third point of error argues the trial court erred in admitting the decedent's will to probate because the evidence shows, as a matter of law, the decedent was unduly influenced by May. It is undisputed that May and the decedent lived together for over 30 years and had a "special" relationship. The attorney who prepared the will, Ruth Russell Schaefer, testified they were "lifemates." Evans argues 30 years of living together provided the opportunity for May to exert undue influence over the decedent and suggests that the decedent and May's relationship as "lifemates" attempts to describe "an unnatural and an unrecognized legal relationship." There was no testimony as to what type of relationship the decedent and May had other than that they were "lifemates"; however, regardless of the type of relationship, the elements of undue influence must exist in order to prevail on a claim of undue influence.

■ The Texas Supreme Court in *Rothermel v. Duncan*, 369 S.W.2d 917 (Tex.1963), set out the elements of undue influence in a will contest. The will contestant must prove: (1) the existence and exertion of an influence; (2) the effective operation of such influence so as to subvert or overpower the mind of the testator at the time of the execution of the testament; and (3) the execution of a

testament which the testator thereof would not have executed but for such influence. *Id.* at 922. The burden of proving undue influence is on the contestant to prove the allegation by a preponderance of the evidence. *Estate of Woods,* 542 S.W.2d 845, 846 (Tex. 1976).

Evans did not object to Schaefer's testimony stating that the decedent was not unduly influenced during the execution of the will. Neither did Evans establish any of the elements of undue influence at trial. Furthermore, we decline to hold that May's 30–year relationship as the decedent's "lifemate" constitutes undue influence as a matter of law.

Therefore, we overrule Evans' third point of error.

### Alterations to the Will

■ Evans' fourth point of error complains the trial court erred by admitting the will to probate because the original will was altered, and the alterations were not verified or authenticated. She claims that the actual signatures of the decedent and a witness were altered by writing or tracing over them.

In regard to decedent's signatures, we have already stated that they were stipulated by the parties as authentic. As for the alteration of the signature of a witness, Evans claims a letter was omitted from the name of said witness. We have examined the copies of the will in the record and can find no such omitted letter from the name of a witness.

Evans also complains the will was altered by tracing over the signatures so it was no longer an original. No pleading or objection at trial raised this contention. There is thus no showing that said tracing, if any, occurred at some time after the original execution of the will. Under these conditions, we decline to address this contention for the first time on appeal.

We overrule Evans' fourth point of error.

### Conclusion

We affirm the trial court's decree admitting the decedent's will to probate.