Opinion issued March 17, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00315-CV

———————————

Barbara Jean Quiroga, Appellant

V.

Sandra Carol
Mannelli,
Appellee



 



 

On Appeal from the 122nd Judicial District Court

Galveston County, Texas



Trial Court Case No. 08CV0254

 



 

MEMORANDUM OPINION

Shortly
before his death, Ulderico Mannelli (Ulderico) changed his account with
Guaranty Bank, which had been payable on his death to his ex-wife, Barbara
Quiroga, to a joint account with his daughter, Sandra Carol Mannelli, giving
her right of survivorship.  After
Ulderico’s death, Quiroga sued Mannelli. 
She sought to set aside the new account agreement as invalid, claiming
that Mannelli had unduly influenced her father into making the change.  Mannelli moved for summary judgment on the
undue influence claim, and the trial court granted her motion.  On appeal, Quiroga contends that the trial
court erred in denying her motion for rehearing of the summary judgment and
attacks the propriety of the summary judgment on its merits.  Finding no error, we affirm.

Background

Facts

Ulderico and Quiroga had a romantic
relationship beginning in the mid-1990’s. 
In the fall of 1995, Quiroga moved into Ulderico’s home, and they
eventually married.  

Ulderico’s marriage to Quiroga was
not his first.  By the time he married
Quiroga, he was in his sixties and had adult children, including Mannelli.  Mannelli suspected that Quiroga was after
Ulderico’s money and told her as much on their first meeting.  

          Four
years after they married, Quiroga and Ulderico divorced.  According to Quiroga, Ulderico divorced her
because he was concerned that the expenses associated with her chronic health
problems would erode his wealth.  In any
event, Quiroga continued to live with Ulderico in his house, but they no longer
held each other out as husband and wife. 
To avoid financial liability for Quiroga’s medical care, Ulderico signed
a letter to her health care providers explaining that she was his housekeeper
and caregiver.  

          As
Ulderico advanced in age, his health began to decline.  In 2002, he had a brain aneurysm. Quiroga had
him brought to the hospital by ambulance and conferred with his treating
physician about his care.  Once Mannelli
and her brother Vincent arrived at the hospital, however, they intervened.  They informed the doctor that Quiroga was not
family and took measures to prevent Quiroga from visiting Mannelli in the
hospital.  Mannelli told Quiroga that she
was going to make sure Quiroga did not see a penny of Ulderico’s money. The
heated discussion among Quiroga, Mannelli, and Vincent then elevated to an
altercation.  According to Quiroga,
Mannelli slapped her, and Vincent hit the side of Quiroga’s head hard enough to
rupture her eardrum.  Quiroga swore out a
criminal complaint against Mannelli for assault, but no charges were brought
against Vincent.

          Before
he had the aneurysm, Ulderico held his money market account with Guaranty Bank
as a joint account with right of survivorship with his adult children, Mannelli
and Vincent.   In early 2003, after he
had recovered from the aneurysm, Ulderico executed documentation to change the
account to one that was payable on death to Quiroga.

          Ulderico
was diagnosed with lung cancer in the spring of 2004.  When Ulderico began chemotherapy treatments,
Quiroga cared for him at home and accompanied him to his doctor visits.  Mannelli visited her father often, bringing
him nutritious food and beverages.  Also
during this time, Ulderico was diagnosed with depression and prescribed
antidepressant medication.  

          By
the fall of 2004, it became apparent that Ulderico’s cancer would not go into
remission.  While Ulderico was
hospitalized in early September, Quiroga made arrangements for his return,
securing a hospital bed and other medical equipment.  After his release, though, Mannelli brought
Ulderico to her own home for hospice care. 


          Several
days after Ulderico began hospice care, Mannelli called the customer service
manager at Guaranty Bank.  When Mannelli
sought information about her father’s accounts, the manager informed her that
he could not answer her questions because her name did not appear on the
accounts.  Mannelli called Ulderico to
the telephone to speak with the manager. 
Ulderico informed the manager that he wished to change the account to
benefit Mannelli rather than Quiroga.  

          Based
on his discussion with Ulderico, the manager prepared the necessary
documentation, then contacted Mannelli. 
Mannelli picked up the documentation and brought it to Ulderico to sign,
then returned the signature card to the bank.  
A week later, on September 22, Mannelli returned to the bank, withdrew
all of the funds, and closed the account. 


          Ulderico
died at Mannelli’s home on September 24. 
After his death, Mannelli evicted Quiroga from the house Ulderico had
owned.  

Proceedings in the trial court

          More
than a year after Quiroga brought suit against Mannelli for undue influence,
Mannelli moved for summary judgment on both traditional and no-evidence
grounds.  After considering the motion
and response, the trial court granted the motion.  In its order, the trial court noted that the
summary judgment order resolved Quiroga’s claims against Mannelli, leaving for
adjudication Mannelli’s motion for sanctions against Quiroga and her
attorney.   Quiroga moved for rehearing
of the summary judgment motion, which the trial court denied.  The trial court severed the remaining issues,
making the summary judgment final and appealable.

Discussion

I.       Standard
of review

Quiroga frames her issues on appeal
as a challenge to the trial court’s denial of her motion for rehearing.  The body of the brief clarifies that she
challenges the summary judgment on its merits. 
Mannelli contends that we should restrict our review to the
abuse-of-discretion review applicable to rulings on motions for rehearing and
not the de novo standard we apply to review summary judgments.  Compare
Macy v. Waste Mgmt., 294 S.W.3d 638, 651 (Tex. App.—Houston [1st Dist.]
2009, pet. denied) (reviewing trial court’s ruling on motion to reconsider
prior summary judgment under abuse-of-discretion standard) with Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex.
2005) (applying de novo standard to review summary judgment).  

We construe Quiroga’s issues on
appeal as encompassing a challenge to the propriety of the summary judgment on
its merits.  “Even though a specific
point on appeal may not be recited within the statement of the issue presented,
that point is not waived if it is raised in the body of the brief.”  Hagberg
v. City of Pasadena, 224 S.W.3d 477, 480 (Tex. App.—Houston [1st Dist.]
2007, no pet.) (citing Tex. Dep’t of
Transp. v. City of Sunset Valley, 146 S.W.3d 637, 642 n.1 (Tex. 2004) (court
may properly consider additional ground for reversal of trial court’s judgment briefed
together with argument addressing appellant’s issue regarding separate ground
for reversal, even though additional ground was not expressly contained in
wording of any issue)).  

Mannelli moved for summary judgment
on both traditional and no-evidence grounds, and the trial court’s order grants
summary judgment without specifying any grounds.  We review a trial court’s summary judgment de
novo.  Valence Operating Co., 164 S.W.3d at 661; Provident Life Accid. Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex.
2003).  Under the traditional standard
for summary judgment, the movant has the burden to show that no genuine issue
of material fact exists and that the trial court should grant a judgment as a
matter of law.  Tex. R. Civ.
P. 166a(c); KPMG Peat Marwick v. Harrison County Hous.
Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).  When reviewing a summary
judgment, we take as true all evidence favorable to the nonmovant and indulge
every reasonable inference and resolve any doubts in the nonmovant’s
favor.  Dorsett, 164 S.W.3d at 661; Knott,
128 S.W.3d at 215; Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d
910, 911 (Tex. 1997).  

Traditional summary judgment is
proper only if the movant establishes that there is no genuine issue of
material fact and that the movant is entitled to judgment as a matter of
law.  Tex.
R. Civ. P. 166a(c). The motion must state the specific grounds relied
upon for summary judgment.  Id.  A defendant moving for traditional summary
judgment must conclusively negate at least one essential element of each of the
plaintiff’s causes of action or conclusively establish each element of an
affirmative defense.  Sci. Spectrum,
Inc., 941 S.W.2d at 911.

After adequate time for discovery, a party may move for a
no-evidence summary judgment on the ground that no evidence exists to support
one or more essential elements of a claim or defense on which the opposing
party has the burden of proof.  Tex. R. Civ. P. 166a(i).  The trial court must grant the motion unless
the nonmovant produces summary judgment evidence raising a genuine issue of
material fact.  Id.  More than a scintilla of evidence exists if
the evidence “would allow reasonable and fair-minded people to differ in their
conclusions.”  Forbes Inc. v. Granada
Bioscis., Inc., 124 S.W.3d 167, 172 (Tex. 2003). 

II.      Late-filed evidence

We decline Quiroga’s invitation to adopt her reading of the
order as containing an “implicit” recitation that it considered the late-filed
evidence.  The plain language of the
order references only the motion for rehearing itself, and does not recite that
the trial court granted leave to consider the late-filed evidence.  “Summary judgment evidence may be filed late,
but only with leave of court.”  Benchmark Bank v. Crowder, 919 S.W.2d
657, 663 (Tex. 1996).  Where nothing
appears in the record to indicate that the trial court granted leave to file
the summary judgment evidence or arguments late, we presume that the trial
court did not consider it.  Id.; Speck
v. First Evangelical Lutheran Church of Houston, 235 S.W.3d 811, 815 (Tex.
App.—Houston [1st Dist.] 2007, no pet.). 


After the trial court granted
summary judgment, Quiroga filed her motion for rehearing, with which she
included, for the first time, various affidavits, including: (1) her own
affidavit detailing her life with Ulderico and the circumstances surrounding
his hospitalization and move to Mannelli’s home; (2) an affidavit executed by
Quiroga’s expert witness, a psychiatrist, tendering his opinion of whether
Ulderico was susceptible to undue influence and attaching the documents he
reviewed to formulate that opinion, including Ulderico’s hospital and hospice
care records, a copy of the Guaranty Bank account signature card signed by
Ulderico, and correspondence that Mannelli sent to Quiroga following Ulderico’s
death. 

In denying rehearing, the trial
court declined to reconsider the summary judgment.  The trial court did not expressly consider
Quiroga’s late-filed evidence or grant leave for Quiroga to file the evidence
on the record, either orally from the bench or by separate written order.  Quiroga does not argue that the trial court
abused its discretion in declining to consider the late-filed evidence.  In reviewing the summary judgment, therefore,
we consider only Quiroga’s initial response and the evidence included with that
response, along with Mannelli’s motion and evidence.  See SP
Terrace, L.P. v. Meritage Homes of Tex., LLC, No. 01-09-0155-CV, 2010 WL
4121088, at *3 (Tex. App.—Houston [1st Dist.] Oct. 21, 2010, no pet.) (mem.
op.) (citing Stephens v. Dolcefino,
126 S.W.3d 120, 133–34 (Tex. App.—Houston [1st Dist.] 2003, pet. denied)).

III.    Undue
influence

“In Texas, the rules guiding
determination of the existence of undue influence apply substantially alike to
wills, deeds, and other instruments.”  Wils v. Robinson, 934 S.W.2d 774 (Tex.
App.—Houston [14th Dist.] 1996), writ
granted, judgm’t vacated w.r.m., 938 S.W.2d 717 (Tex. 1997); see Rothermel v. Duncan, 369 S.W.2d 917,
922 (Tex. 1963) (relying on, among other precedent, Curry v. Curry, 270 S.W.2d 208 (Tex. 1954), involving execution of
deed, in discussing undue influence in testamentary disposition).  In deciding whether undue influence has been
exerted, the contestant must prove:

(1)     the existence and exertion of an influence;

(2)     that the influence operated to subvert or overpower the person’s
mind when executing the document; and

(3)     that the person would not have executed the document but for the
influence.

Rothermel, 369
S.W.2d at 922.  Influence 

is not undue unless the free agency of the
testatrix was destroyed and the will produced expresses the wishes of the one
exerting the influence.  One may request,
importune, or entreat another to create a favorable dispositive instrument, but
unless the importunities or entreaties are shown to be so excessive as to
subvert the will of the maker, they will not taint the validity of the
instrument. 

Guthrie v.
Suiter, 934 S.W.2d 820, 831 (Tex. App.—Houston [1st Dist.] 1996, no writ).  

The Texas Supreme Court has
repeatedly observed that “every case of undue influence must be decided on its
own peculiar facts.”  Pearce v. Cross, 414 S.W.2d 457, 462
(Tex. 1967) (citing Rothermel, 369
S.W.2d at 922); see also Curry, 270 S.W.2d at 211 (acknowledging
that circumstances of each case will dictate whether undue influence
exists).  Among other factors, courts
consider:

·       
the circumstances surrounding execution of the instrument;

 

·       
the relationship between the transferor and the beneficiary and any
others who might be expected recipients of the testator’s bounty;

 

·       
the motive, character, and conduct of the persons benefitted by the
instrument;

 

·       
the participation by the beneficiary in the preparation or execution of
the instrument;

 

·       
the words and acts of the parties;

 

·       
the interest in and opportunity for the exercise of undue influence;

 

·       
the physical and mental condition of the transferor at the time of the instrument’s
execution, including the extent to which he was dependent upon and subject to
the control of the beneficiary; and

 

·       
the improvidence of the transaction by reason of unjust, unreasonable, or
unnatural disposition of the property.

 

Guthrie, 934
S.W.2d at 831.

A.      Burden of proof

The person challenging the validity
of an instrument generally bears the burden of proving the elements of undue
influence by a preponderance of the evidence.  Evans v.
May, 923 S.W.2d 712, 715 (Tex. App.—Houston [1st Dist.] 1996, writ denied).
 In some cases involving confidential or
fiduciary relationships, however, the burden shifts to the person receiving the
benefit to prove the fairness of the transaction.  See,
e.g., Bohn v. Bohn, 455 S.W.2d
401, 410–11 (Tex. Civ. App.—Houston [1st Dist.] 1970, writ dism’d) (burden of
proof on husband, who was attorney and drafted documentation of wife’s gift of
stock certificates); see also Buckner v.
Buckner, 815 S.W.2d 877, 879–81 (Tex. App.—Tyler 1991, no writ) (upholding
admission of will to probate after court found evidence sufficient to support
finding that delay was result of son’s fraud on wife, decedent’s
daughter-in-law and will proponent; son did not meet burden to show fairness in
transaction where he misrepresented to wife that they did not need to probate
will because transfer by intestate succession would effect same result).  

Quiroga contends that Mannelli
should bear the burden to prove no undue influence in this case.  This contention lacks merit.  Under analogous circumstances, the Texas
Supreme Court expressly refused to apply the rule urged by Quiroga.  Gates
v. Asher, 280 S.W.2d 247, 250 (Tex. 1955). 
Gates involved a challenge to
a transfer by deed from a mother to her daughter.  Like Quiroga, the parties challenging the
validity of the transfer contended that the daughter who received the deed had
a confidential or fiduciary relationship to her mother and, consequently,
should bear the burden to rebut the presumption of fraud or undue influence and
prove the fairness of the transaction.  Id. 
The Court categorically rejected that position.  A transfer from parent to child does not give
rise to a presumption of undue influence, and the burden remains with the party
challenging the transaction’s validity.  Id. 
Quiroga does not point to any Texas authority that would cause us to
question the applicability of Gates
to this case.  




 

          B.      Summary judgment evidence

Quiroga challenges the propriety of
summary judgment based on the grounds set forth in Mannelli’s motion, which
attack the first and third elements of Quiroga’s undue influence claim.  To determine whether the evidence raises a
fact issue on the first element, concerning the existence and exertion of an
influence over Ulderico, we examine the relationship between the person who
executed the document, the contestant, and the party accused of exerting undue
influence.  See Rothermel, 369 S.W.2d at 923. 
Quiroga points to evidence that, at or near the time Ulderico changed
the account beneficiary,

·       
Ulderico was seventy-six years old, terminally ill with cancer and in
hospice care;

 

·       
Ulderico was living with Mannelli, who was responsible for his care;

 

·       
Mannelli initiated the call to the bank to change the account; and

 

·       
Mannelli had repeatedly expressed great animosity toward Quiroga, telling
Quiroga that she would prevent her from receiving Ulderico’s money.

This evidence, at most, raises a
fact issue as to whether Mannelli had an opportunity to exert influence over
Ulderico.  “Mere opportunity to unduly
influence a testatrix is no proof that influence has actually been exerted.”  Guthrie,
934 S.W.2d at 832 (citing Miller v. Flyr,
447 S.W.2d 195, 202–03 (Tex. Civ. App.—Amarillo 1969, writ ref’d n.r.e.)).  Nothing in the summary judgment record raises
a fact issue that Mannelli “coerced, intimidated, or otherwise forced” Ulderico
to change the bank designation.  See id.  The circumstances show that in Ulderico’s
final days, his daughter took over his care, and Ulderico changed the bank
account designation to one that would benefit a family member rather than his
ex-wife.  A bank account officer verified
that Ulderico intended to change the account. 
This evidence does not rise to a level that would enable reasonable and
fair-minded people to differ in their conclusions about whether Mannelli unduly
influenced Ulderico to change his account beneficiary.  See
Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997).  The trial court did not err in granting
Mannelli’s summary judgment motion or in denying Quiroga’s motion for
rehearing.

Conclusion

          The
trial court correctly granted summary judgment and denied rehearing.  We therefore affirm the judgment of the trial
court.

 

 

                                                                   Jane
Bland

                                                                   Justice


 

Panel
consists of Chief Justice Radack and Justices Alcala and Bland.