**Affirmed and Memorandum Opinion filed December 28, 2023.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-22-00773-CV

---

## CYNTHIA MYNARD, Appellant

## V.

## CHARLES ASHLEY DEGENHARDT, Appellee

---

**On Appeal from the County Court at Law No. 4
Williamson County, Texas
Trial Court Cause No. 20-0860-CP4**

---

## M E M O R A N D U M   O P I N I O N

Cynthia Mynard appeals an order admitting to probate the will of her mother, Jacqueline Mynard ("Jackie"), and authorizing letters testamentary that named Jackie's grandson, Charles Ashley Degenhardt, the dependent executor of the estate. *See* Tex. Est. Code § 32.001(c) (allowing appeals to the court of appeals). Cynthia contested Charles's application to probate the will and offered a later-dated purported holographic codicil that she contended revived one of Jackie's earlier wills. In the probated will, Jackie left her estate largely to her grandson Charles and

to her daughter, Pamela Mynard, who is Charles's mother; Cynthia and Lee Mynard, Jackie's two other adult children, were explicitly disinherited and left only $500 each.

Cynthia challenges the admission of the will to probate in six issues: (1) the trial court erred by refusing to admit the later-dated purported holographic codicil reviving an earlier formal will to probate; (2) the trial court erred by admitting the will Charles offered to probate; (3) the trial court erred in finding the revocation clause of the probated will revoked an earlier will; (4) the trial court erred by excluding certain evidence Cynthia offered, which was not harmless; (5) the trial court erred in refusing to file findings on omitted issues necessary to support its judgment; and (6) the trial court erred in denying Cynthia's request for attorney's fees.

After a thorough review of the record, we conclude that the trial court did not abuse its discretion by admitting to probate the will Charles offered, nor did any evidentiary errors or the failure to file amended findings result in any harm to Cynthia. Finally, we conclude that the trial court was within its discretion to deny Cynthia's request for attorney's fees. Accordingly, we affirm the trial court's order.

## Background

Jackie died on August 20, 2020 when she was 86 years old. She was survived by two of her three adult children, Pamela and Cynthia. Her son Lee predeceased her.

In March 2016, Jackie's attorney, Merlin Lester, prepared a formal, self-proved will (the "March 2016 will"). In the March 2016 will, Jackie divided her estate equally among her three children.

2

In April 2018, Jackie executed another will (the "April 2018 will"), in which she revoked the March 2016 will and largely split her estate between Pamela and Charles, on the one hand, and Cynthia, on the other. Jackie disinherited Lee in this will, leaving him only $10. Jackie signed this will in the presence of two witnesses and a notary at her local bank. According to the will's notary, Jackie brought the two witnesses in with her to the bank to execute the April 2018 will. Both witnesses verified that they were present when Jackie executed this will.

Around May of 2018, Charles and Pamela moved in with Jackie to help care for her as her health was declining. Cynthia lived in Virginia and was unable to move to Texas full-time to help with Jackie's care, although she visited regularly.

On July 21, 2018, while Jackie was in the hospital being treated for pneumonia, she executed a new will (the "July 2018 will"). Charles drafted this will by making changes, purportedly at Jackie's direction, to the April 2018 will. In the July 2018 will, Jackie revoked her prior wills and explicitly disinherited both Lee and Cynthia, except for leaving them $500 each. She divided her estate among Pamela and Charles. Jackie read and signed the July 2018 will in the presence of two disinterested witnesses, Curtis Marley and Michelle Tribble, and a notary, Beth Barton.[1] Barton gave the will to Jackie after it was executed, witnessed, and notarized. However, shortly before Jackie's death, Charles returned the July 2018 will to Barton for "safekeeping."

Also in July 2018, Jackie contacted Lester about preparing a new will, and Lester drafted a new will for her to sign. In this draft will, Jackie excluded Lee and Cynthia from receiving any benefits of her estate, except a distribution of $1,000 to each of them; she split the remainder of her estate among Charles and Pamela. Jackie

---

[1] Barton went to the hospital's waiting room to find the witnesses, neither of whom knew any of the parties to the will or the notary.

had an August 29, 2018 appointment to sign this will, but she did not appear for the appointment. The only signed testamentary document Lester had in his files was Jackie's March 2016 will.

As shown below, Jackie made the following handwritten notations on a copy of the March 2016 will: "Addendum. 8-14-19. Lots in Zent Subdivision #'s 12, 13, 14 be given have been sold to Robert Winnon Lee, my brother — [signed] Jacqueline Lee Mynard JLM" (the "August 2019 addendum").

PREPARED IN THE OFFICE OF:

LAW OFFICE OF MERLIN LESTER
213 A West 8th Street
Georgetown, Tx 78626

It is unclear when the "be given" language was struck through and the notation "have been sold" was added to the addendum.

After Jackie's death, Charles filed an application to probate the July 2018 will. Cynthia filed a counter-application to probate a copy of the August 2019 addendum, alleging that it was a holographic codicil that revived the March 2016 will and revoked the July 2018 will. Cynthia contended that only the original language, not the struck-through portion, constituted a codicil. She did not have an original of either the August 2019 addendum or the March 2016 will.

The trial court conducted a four-day bench trial on Charles's and Cynthia's competing applications for probate. After the trial, the trial court admitted the July

4

2018 will to probate, named Charles as the dependent executor of Jackie's estate, and issued letters testamentary. The trial court ordered that "no attorney's fees are being awarded to either party," making each party responsible for their own attorney's fees in this will contest.

At Cynthia's request, the trial court signed findings of fact and conclusions of law. Pertinently, the trial court found that:

- on April 12, 2018, Jackie executed a prior will with the formalities and solemnities and under the circumstances required by law to make it valid;

- the April 2018 will revoked all prior wills;

- in June 2018, Jackie sent an email to Cynthia, Lee, and Lee's wife Mary, expressing how upset she was with them;

- the July 2018 will was executed with the formalities and solemnities and under the circumstances required by law to make it valid;

- Jackie had sufficient mental ability to understand she was making the July 2018 will and she was not unduly influenced;

- the July 2018 will was proved by the sworn testimony of two disinterested witnesses, Marley and Tribble, and the notary who witnessed the signatures of Jackie, Marley, and Tribble;

- the July 2018 will revoked all prior wills;

- the July 2018 will was not subsequently revoked;

- the August 2019 addendum was not a codicil;

- Cynthia did not produce an original of the August 2019 addendum;

- Cynthia did not produce an original of the March 2016 will;

- the March 2016 will was revoked by the April 2018 will;

- the March 2016 will was not revived by the copy of the August 2019 addendum; and

- neither Charles nor Pamela destroyed any of Jackie's prior wills.

5

Based on its findings, the trial court concluded that Charles satisfied his required burden of proof to establish admission of the July 2018 will to probate and that Cynthia failed to satisfy her required burden of proof to establish admission of the copy of the August 2019 codicil and March 2016 will to probate.

Cynthia sought additional findings of fact, but the trial court declined to issue any. Cynthia appeals.

## Analysis

### A. Admission of the July 2018 Will to Probate

In her first three issues, Cynthia challenges the trial court's admission of the July 2018 will to probate. We begin our analysis with the applicable standards of review.[2]

#### 1. *Standards of review*

We generally review a trial court's ruling on a probate application for an abuse of discretion. *Castillo v. Castillo-Wall*, No. 03-21-00081-CV, 2022 WL 1434110, at *2 (Tex. App.—Austin May 6, 2022, no pet.) (mem. op.); *In re Est. of Gay*, 309 S.W.3d 676, 679 (Tex. App.—Houston [14th Dist.] 2010, no pet.). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *Cire v. Cummings*, 134 S.W.3d 835, 838-39 (Tex. 2004); *Gay*, 309 S.W.3d at 679. A trial court also abuses its discretion if it misconstrues or misapplies the law. *Gay*, 309 S.W.3d at 679.

Under the abuse-of-discretion standard, legal and factual sufficiency of the evidence are not independent grounds for asserting error, but they are relevant

---

[2] The Supreme Court of Texas ordered the Third Court of Appeals to transfer this case to our court. *See* Tex. Gov't Code § 73.001. We are unaware of any conflict between Third Court of Appeals precedent and that of this court on any relevant issue. *See* Tex. R. App. P. 41.3.

factors in assessing whether the trial court abused its discretion. *Est. of Brown*, No. 01-19-00953-CV, 2022 WL 17813757, at *6 (Tex. App.—Houston [1st Dist.] Dec. 20, 2022, pet. filed) (mem. op.); *see Flowers v. Flowers*, 407 S.W.3d 452, 457 (Tex. App.—Houston [14th Dist.] 2013, no pet.). A trial court does not abuse its discretion when some evidence of a substantive and probative character exists to support the trial court's decision. *Flowers*, 407 S.W.3d at 457.

When examining legal sufficiency, we review the entire record, considering evidence favorable to the finding if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018); *In re Est. of Parrimore*, No. 14-14-00820-CV, 2016 WL 7520293, at *4 (Tex. App.—Houston [14th Dist.] Feb. 25, 2016, no pet.) (mem. op.). We indulge every reasonable inference that would support the challenged finding. *Gunn*, 554 S.W.3d at 658; *Parrimore*, 2016 WL 7520293, at *4. Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the decision under review. *Gunn*, 554 S.W.3d at 658; *Parrimore*, 2016 WL 7520293, at *4. For a factual-sufficiency review, we examine the entire record and consider evidence favorable and contrary to the challenged finding. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Parrimore*, 2016 WL 750293, at *5. We may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain*, 709 S.W.2d at 176; *Parrimore*, 2016 WL 750293, at *5. When considering the sufficiency of the evidence, we must remain mindful that this court is not a factfinder, and the trial court is the sole judge of the witnesses' credibility and the weight to afford their testimony. *See Parrimore*, 2016 WL 750293, at *4-5.

2. *The August 2019 addendum is not a codicil*

In her first issue, Cynthia asserts the trial court erred by refusing to recognize the August 2019 addendum as a codicil. Cynthia contends that this "codicil" revived the March 2016 will and that both should have been admitted to probate. The trial court disagreed, finding that "the copy of a handwritten memorandum dated August 2019 is not a codicil." We agree with the trial court.

"A codicil is a testamentary writing that is supplementary to an earlier testamentary writing and must be executed with the formalities required in the making of a will." *Phillips v. Copeland*, No. 01-12-00492-CV, 2013 WL 1932179, at *4 (Tex. App.—Houston [1st Dist.] May 9, 2013, no pet.) (mem. op.). These formalities include, as applicable here, that the codicil must be wholly in the testator's handwriting and signed by the testator in person. *See* Tex. Est. Code §§ 251.051-.052. Additionally, a codicil must make sufficient reference to the will it amends, and it must express testamentary intent. *See In re Est. of Hendler*, 316 S.W.3d 703, 708 (Tex. App.—Dallas 2010, no pet.). Testamentary intent is the intent to create a revocable disposition of property that will take effect after death. *Hinson v. Hinson*, 280 S.W.2d 731, 733 (Tex. 1955); *In re Est. of Silverman*, 579 S.W.3d 732, 736 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *Hendler*, 316 S.W.3d at 708. "The introduced writing must contain an explicit statement declaring that the writings are wills or codicils or that the property division will take place only after the testator's death." *Wilson v. Franks*, No. 03-22-00718-CV, 2023 WL 6627522, at *2 (Tex. App.—Austin Oct. 12, 2023, no pet. h.) (mem. op.). Construction of a testamentary instrument is a question of law when the instrument is not ambiguous. *Id.* However, if it is unclear from the language of an instrument whether its maker created it with testamentary intent, we may consider evidence of surrounding facts and circumstances. *See Hendler*, 316 S.W.3d at 708.

Here, the August 2019 addendum stated, "Lots in Zent Subdivision #'s 12, 13, 14 ~~be given~~ have been sold to Robert Winnon Lee, my brother." Cynthia contends that Jackie's testamentary intent is evidenced by the stricken language that the Zent lots would be "given" to her brother. Cynthia effectively asked the trial court to ignore that this language was stricken and replaced with "have been sold." Cynthia testified that the "original" language—i.e., "be given"—appeared to have been written with a "fine ball point pen," while the "have been sold" language appeared to have been written "in a thicker, maybe like a medium point pen." Although it is true that the "have been sold" notation appears bolder than the struck through words, there is simply no way to tell when the strike-through and substitution occurred. As written, the August 2019 addendum expresses no testamentary intent and instead reflects merely that some of Jackie's property was sold to her brother.

Even if we were to credit the stricken "be given" language, nothing in the addendum reflects that Jackie intended that the property be given to her brother *upon her death*. *See Hinson*, 280 S.W.2d at 733-34; *Wilson*, 2023 WL 6627522, at *2; *Silverman*, 679 S.W.3d at 736; *Hendler*, 316 S.W.3d at 708. At most, the notations express Jackie's intent to give this property to her brother at some point in the future.[3] *Cf. In re Est. of Schiwetz*, 102 S.W.3d 355, 363-64 (Tex. App.—Corpus Christi 2003, pet. denied) (explaining that when writings contained no explicit statements that they were wills or codicils or that the property division would take place after the decedent's death, they at most expressed an intent on the decedent's part to dispose of her property in the future and thus lacked the necessary

---

[3] Lester testified that, around the time that the addendum was written, he was assisting Jackie in selling this property to Robert. According to Lester, the real estate transactions may have been "underway" when Jackie made the notations, although no formal contract had been drafted and no money—so far as Lester knew—had changed hands. Because this evidence undermines any potential testamentary intent expressed in the August 2019 addendum, it also supports the trial court's finding that the addendum was not a codicil.

testamentary intent to constitute a codicil); *In re Est. of Graham*, 69 S.W.3d 598, 608 (Tex. App.—Corpus Christi 2001, pet. denied) ("A document that merely evidences an intention to dispose of the property is not a will.").

In short, we agree with the trial court that the August 2019 addendum was not a codicil, and we hold that the trial court did not abuse its discretion in refusing to admit the August 2019 addendum to probate. Because we conclude that the trial court did not err in rejecting the addendum as a codicil, we need not address Cynthia's arguments concerning whether the addendum revived Jackie's earlier March 2016 will or revoked the July 2018 will.

We overrule Cynthia's first issue.

3. *Cynthia did not establish the July 2018 will was the result of undue influence*

In issue two, Cynthia urges that the trial court erred by admitting the July 2018 will to probate. She first asserts that Charles failed to establish that Jackie did not revoke this will, relying on her arguments concerning the August 2019 addendum addressed above. Because we have determined that the trial court did not abuse its discretion in determining that the August 2019 addendum was not a codicil, we do not revisit those arguments here. Thus, we confine our discussion to Cynthia's arguments that the July 2018 will was the product of undue influence by Pamela and Charles. Cynthia asserts that the trial court's finding that Jackie was not unduly influenced when she executed this will is based on legally and factually insufficient evidence. We disagree.

Undue influence is a ground for setting aside a will. *See Rothermel v. Duncan*, 369 S.W.2d 917, 922 (Tex. 1963). A will contest based on a claim that the will was procured by undue influence has three elements: (1) an influence existed and was exerted; (2) the exertion of the influence subverted or overpowered the mind of the

10

testator at the time she signed the will; and (3) the testator would not have made the will but for the influence. *See In re Est. of Woods*, 542 S.W.2d 845, 847 (Tex. 1976); *Rothermel*, 369 S.W.2d at 922; *In re Est. of Casas*, No. 14-20-00575-CV, 2022 WL 711087, at \*3 (Tex. App.—Houston [14th Dist.] Mar. 10, 2022, no pet.) (mem. op.). The burden to prove undue influence normally rests on the party challenging the instrument's validity. *Casas*, 2022 WL 711087, at \*3.

To satisfy the first element, the will contestant must show that an influence existed and was exerted. *Rothermel*, 369 S.W.2d at 922. Relevant factors include: (1) the nature and type of relationship existing between the testator, the contestant, and the party accused of exerting such influence; (2) the opportunities for the exertion of the alleged influence; (3) the circumstances surrounding the drafting and execution of the will; (4) the existence of a fraudulent motive; and (5) whether the testator was habitually under the control of another. *Id.* at 923. The exertion of influence, however, cannot be inferred from opportunity alone, such as might result from caring for the testator or seeing to her needs. *Id.* There must be proof showing both that the influence existed and that it was exerted. *Id.*; *Casas*, 2022 WL 711087, at \*4.

Regarding the relationships between Jackie, Cynthia, Pamela, and Charles, Cynthia testified that she enjoyed a loving and supportive relationship with Jackie. Cynthia had lived in Virginia for about twenty-eight years before Jackie's death, although she visited Jackie once or twice a year and maintained frequent contact through phone calls, letters, and cards. In early 2018, Jackie asked Cynthia to move to Texas to take care of her, but Cynthia could not. Additionally, Jackie's sister-in-law, Penny Lee, testified that she was not aware of any friction between the two during the last few years of Jackie's life.

11

However, Beth Barton, the individual who notarized Jackie's July 2018 will and had known Jackie since 1992, testified that in 2018 Cynthia and Lee placed calls to Jackie in an effort to pressure her to change her will. Barton's testimony is supported by a message that Jackie sent to Cynthia, Lee, and Lee's wife, Mary, about six weeks before Jackie signed the July 2018 will.[4] This message, sent in June 2018, detailed substantial conflict between Jackie and the message's recipients, including Cynthia, and indicated that Lee and Cynthia made unwelcome phone calls to Jackie and her attorney inquiring about Jackie's will and financial arrangements; it further stated that Cynthia, Lee, and Mary were not welcome in Jackie's home unless Jackie invited them. The message expressed that Jackie was greatly hurt by Cynthia's, Lee's, and Mary's actions taken since Pamela and Charles moved in to help take care of her.

Cynthia described Jackie's relationship with Pamela as "tense" and "volatile." Robert Lee, Jackie's younger brother, testified that Pamela could be confrontational and controlling. Cynthia and Robert were both surprised when Pamela moved into Jackie's home. According to Penny and Robert, after Pamela and Charles moved in, Jackie became more withdrawn, tense, and nervous, and Pamela became more controlling of Jackie; Robert said that Jackie appeared fearful of Pamela.

That Pamela and Charles moved in with Jackie and were living with her as her health was declining shows that they had the opportunity to exert influence on her as to the execution of the July 2018 will. Cynthia suggests that Pamela and Charles "carried out a plan to isolate Jackie from her other children," pointing to

---

[4] The trial court found that Jackie sent this message. Cynthia does not dispute that she received this message. However, she contends that the trial court's finding was erroneous, based on the "context and surrounding circumstances." The trial court, however, as the sole judge of the witnesses' credibility and the weight to be given their testimony, was entitled to determine whether the context and surrounding circumstances indicated that Jackie sent the message.

Cynthia's testimony that Jackie was hospitalized in April 2018 but no one told her. Cynthia also suggests that Jackie's June 2018 message shows that Pamela and Charles were isolating Jackie because in the message, Jackie told Cynthia, Lee, and Mary not to visit her without an invitation. Cynthia's contention turns on her claim that Pamela, not Jackie, sent the message. But her argument is contrary to the trial court's finding. And the message stated that Jackie asked Pamela and Charles to move in with her so that she could "receive the constant care [she] need[s] now and in the future, from THEM, so that [she] would not become a physical, emotional or financial burden on [Cynthia, Lee, or Mary]." The message expressed appreciation for Pamela and Charles and stated that they were "not using" Jackie in any way.

Cynthia presented some evidence that Pamela and Charles had the opportunity to influence Jackie. But opportunity to exert influence is not alone sufficient to show undue influence. *See Rothermel*, 369 S.W.2d at 923; *Casas*, 2022 WL 711087, at *5. Cynthia was required to show that Charles or Pamela actually exerted an influence over Jackie that subverted or overpowered Jackie's mind at the time she signed the will. *Rothermel*, 369 S.W.2d at 922. On this element, relevant considerations include: (1) the testator's state of mind and evidence relating to her ability to resist or susceptibility to the influence of another, such as mental or physical infirmity or incapacity, when the testament was executed; and (2) the testator's words and acts. *Id.* at 923.

Regarding whether Charles or Pamela actually exerted an influence over Jackie, the record contains scant evidence. For example, there is no evidence that Charles or Pamela ever asked or urged Jackie to change her will to favor them. Instead, Cynthia's argument that they exerted an undue influence is based on circumstantial facts, such as that Pamela and Charles were Jackie's caretakers, the

13

will was drafted only a few months after they moved in to help care for Jackie, and that Charles purportedly "authored" the will.

Although Jackie's physical health was declining, there was no evidence that, at the time she signed the will, her mental health was in decline or that she was mentally incapacitated in any way. *Cf. Casas*, 2022 WL 711087, at *5 (describing mental decline of testator). Charles described Jackie as a "headstrong" person. Similarly, Barton, a disinterested witness, testified that Jackie was a "strong lady" who "had her own way of doing things." Indeed, Cynthia acknowledges that "Jackie's mind was strong, but her age and health condition prevented her from taking care of herself at home any longer." She contends that these facts left Jackie "vulnerable and susceptible to Pamela and [Charles], dependent upon them to provide for her care. . . ." But "close relations or the provision of care standing alone do not suffice to show undue influence." *Casas*, 2022 WL 711087, at *4 (citing *Guthrie v. Suiter*, 934 S.W.2d 820, 832 (Tex. App.—Houston [1st Dist.] 1996, no writ); *Evans v. May*, 923 S.W.2d 712, 715 (Tex. App.—Houston [1st Dist.] 1996, writ denied)).[5]

When, as here, the relevant witnesses are available, their testimony about the planning and preparation of the challenged will is central to a claim of undue influence. *Yost v. Fails*, 534 S.W.3d 517, 526 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Although no one testified about the planning of the July 2018 will,[6] there was ample testimony about the will's preparation by those present when it was

_____

[5] Indeed, Cynthia would be hard-pressed to argue that Jackie was in such mental decline by 2018 that she lacked capacity to execute the July 2018 will since Cynthia expressly argued in her brief that "Jackie Had Testamentary Capacity" as of August 14, 2019.

[6] We note, however, that Charles repeatedly testified that he and Jackie never discussed how Jackie wanted to dispose of her estate. Cynthia does not identify any evidence that Pamela discussed or expressed her desires as to the content of Jackie's will, nor was Pamela present at the will's signing.

14

drafted and executed. First, although Cynthia contends that Charles was the "author" of the July 2018 will, Charles testified that Jackie dictated the terms of the will to him and he merely recorded her wishes. Barton witnessed Jackie dictating the terms of the will to Charles and agreed that the July 2018 will reflected the terms that Jackie requested. Second, when Barton questioned Jackie about the will's terms, Jackie stated that she was "very certain" about them. Barton specifically asked Jackie if she wanted to leave Cynthia and Lee only $500 each; Jackie responded, "Yes, this is what I want to do."[7] Third, Marley and his daughter, Tribble, testified that Jackie did not seem to be influenced by anyone. Marley agreed that Jackie reviewed the will before she signed it. Marley and Tribble spoke with Jackie for about thirty minutes on the day she executed the will, and neither saw any signs of duress. In fact, Marley described Jackie as "very relaxed and casual." Tribble stated that nothing about Jackie's demeanor caused her any concern about Jackie's mental state, nor did anything lead her to believe that Jackie was afraid, frightened, or being influenced by anyone when she signed the will. In sum, nothing in the testimony offered by the witnesses present at the will's execution supports a finding that either Pamela—who was not present—or Charles actually exerted an undue influence over Jackie at the time she executed the July 2018 will. *See In re Est. of Kam*, 484 S.W.3d 642, 653-54 (Tex. App.—El Paso 2016, pet. denied) (overturning trial court's finding of undue influence when there was insufficient evidence that alleged influencer actually overwhelmed testator's free agency).

We are mindful that undue influence may be established by circumstantial evidence, but the circumstances must be of "a reasonably satisfactory and convincing character" and "not be equally consistent with the absence of the exercise

---

[7] Barton testified that Jackie told her that, between April and July 2018, Cynthia and Lee were calling and "pressuring [Jackie] to do something different with her will." Barton described Jackie as "very saddened" by their actions.

of such influence." *Rothermel*, 369 S.W.2d at 922-23. Influence is undue only if the volition of the testator is destroyed and the resulting will expresses the wishes of the one exerting the influence. *Id.* at 922. Such undue influence may include force, intimidation, duress, excessive importunity, or deceit. *Id.* There is no evidence in today's case of any force, intimidation, duress, excessive importunity, or deceit by either Charles or Pamela as it relates to Jackie's execution of the July 2018 will. If the relevant conduct is not so excessive as to actually subvert the testator's will, it will not taint the instrument's validity. *Id.* This is so because Texas respects the legal rights of testators of sound mind to dispose of their property as they see fit; those desires should not be set aside based upon a mere surmise or suspicion of wrongdoing. *Id.*; *Casas*, 2022 WL 711087, at *4.

Cynthia relies on evidence she proffered that Jackie was fearful of Pamela and Charles and wanted them to move out of her home. But most of this evidence arose months after the signing of the July 2018 will, and the trial court excluded that evidence which was not temporally connected to the will's signing.[8] Importantly, the testimony from the three disinterested witnesses who were present at the July 2018 will's execution describing Jackie's demeanor, mental state, and words evidenced that any exertion of influence by Pamela or Charles did not subvert or overpower Jackie's mind at the time she signed the will.[9] *See Rothermel*, 369 S.W.2d at 923 ("Where there is competent evidence of the existence and exercise of such influence, the issue as to whether it was effectually exercised necessarily turns the inquiry and directs it to the state of the testator's mind *at the time of the execution of the testament....*"); *see also Casas*, 2022 WL 711087, at *9-11 (discussing cases

---

[8] *See infra*, section B, where we address Cynthia's evidentiary complaints.

[9] Cynthia proffered no evidence that Jackie was fearful of Charles around the time she executed the July 2018 will; rather, her proffered evidence focused on Jackie's purported fear of Pamela. And, as noted above, Pamela was not present when Jackie signed the will.

involving undue influence). Because there is no evidence that the existence and actual assertion of influence upon Jackie actually overpowered her mind or desires, we need not analyze the evidence pertaining to the third element of undue influence—whether Cynthia established that Jackie would not have made the challenged will but for the influence. *E.g.*, *In re Est. of Sidransky*, 420 S.W.3d 90, 95 (Tex. App.—El Paso 2012, pet. denied) ("Evidence concerning one element is insufficient because each element is necessary to establish a claim of undue influence.") (citing *Rothermel*, 369 S.W.2d at 923).

In sum, we conclude that a reasonable and fair-minded factfinder could find that any exertion of Pamela's or Charles's influence did not subvert or overpower Jackie's mind at the time she signed the will. Further, such a finding is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. The trial court's finding that the July 2018 will was executed without undue influence is supported by legally and factually sufficient.

We overrule Cynthia's second issue.

4. *The July 2018 will revoked the April 2018 will*

In her third issue, Cynthia argues that the trial court erred by finding that the July 2018 will revoked the April 2018 will. The July 2018 will contains an explicit revocation clause: "I hereby revoke any and all former Wills and Codicils thereto made by me and declare this my Last Will and Testament." Thus, as Cynthia acknowledges in her briefing, this issue turns on whether the July 2018 will is invalid. *See Abbott v. Foy*, 662 S.W.2d 629, 631 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.) (an invalid will cannot serve to revoke a former will). We have determined that the trial court did not err in admitting the July 2018 will to probate.

17

We overrule Cynthia's third issue.

## B. Exclusion of Evidence

In issue four, Cynthia contends the trial court committed harmful error by erroneously excluding various evidence she offered.

### 1. *Standard of review*

The decision to admit or exclude evidence lies within the sound discretion of the trial court. *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007). A trial court exceeds its discretion if it acts in an arbitrary or unreasonable manner or without reference to guiding rules or principles. *Izen v. Laine*, 614 S.W.3d 775, 795 (Tex. App.—Houston [14th Dist.] 2020, pets. denied). When reviewing matters committed to the trial court's discretion, we may not substitute our own judgment for that of the trial court. *Id.* We will uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling, even if that ground was not raised in the trial court. *Id.*

A party seeking to reverse a judgment based on evidentiary error must prove that the error probably resulted in rendition of an improper judgment. *Id.*; *see* Tex. R. App. P. 44.1(a)(1). To determine whether evidentiary error probably resulted in the rendition of an improper judgment, we review the entire record. *Izen*, 614 S.W.3d at 795.

### 2. *No abuse of discretion shown*

Much of Cynthia's argument in support of this issue turns on her contention that the August 2019 addendum was, in fact, a codicil, an argument we have rejected. For example, Cynthia argues that Penny Lee's testimony[10] regarding events in June

---

[10] Cynthia preserved this complaint by making an offer of proof describing the content of Penny's excluded testimony. *See* Tex. R. Evid. 103; Tex. R. App. P. 33.1(a)(1)(B).

2020 was relevant because it was necessary to overcome the presumption of revocation when attempting to probate a copy of the August 2019 addendum. And Cynthia asserts that the exclusion of some of Robert Lee's testimony and audio recordings[11] was harmful error because, without this evidence, she could not: (a) overcome the presumption that the original August 2019 addendum was destroyed by Jackie; (b) show that Jackie's state of mind prior to executing the August 2019 addendum was consistent with the addendum's substance; (c) show that Jackie's affection for Charles and Pamela, the "beneficiaries under the prior July 2018 Will" had changed, and Jackie desired to change that will; and (d) show Jackie's desire to leave her estate to all of her children.

Because we have concluded that the August 2019 addendum was not a codicil, the exclusion of this evidence could not have resulted in the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a)(1). Thus, we need not address whether the trial court abused its discretion in excluding the evidence related to the August 2019 addendum. *See* Tex. R. App. P. 47.1.

Cynthia also asserts that some of Robert's excluded testimony and audio recordings "support that the July 2018 Will and its disposition of [Jackie's] estate was unnatural," thus showing that the July 2018 will was a product of undue influence. But as explained above, we concluded that legally sufficient evidence supports the trial court's finding that the July 2018 will was not signed under duress because there was no evidence that Pamela's or Charles's influence, if any, subverted or overpowered Jackie's mind at the time she signed the will. *See Rothermel*, 369 S.W.2d at 923 ("The exertion of influence that was undue cannot be

---

[11] Cynthia's counsel made an offer of proof, describing what Robert's testimony would have consisted of and including the audio recordings, as well as transcripts of the recordings, in the record. *See* Tex. R. Evid. 103.

inferred alone from opportunity, but there must be some testimony, direct or circumstantial, to show that influence was not only present but that *it was in fact exerted with respect to the making of the testament itself*." (emphasis added)). Once we reached this conclusion, we did not—and need not—determine whether the disposition of Jackie's estate was unnatural. *See id.* at 924 ("The elements of the exertion and the effective operation of any influence possessed by Louis over his mother so as to subvert or overpower her will and cause the execution of this testament are not supported by any tangible evidence. Because of the disposition we make of this case we need not consider the other issues raised on this appeal."). Accordingly, the trial court's exclusion of any evidence going to this element did not cause the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a)(1); *Mittelsted v. Meriwether*, 661 S.W.3d 867, 898 (Tex. App.—Houston [14th Dist.] 2023, pet. denied) (evidentiary errors are generally not grounds for reversal unless the appellant demonstrates that the judgment turns on the challenged evidence or the challenged evidence is controlling on a material, disputed, dispositive issue).

Finally, Cynthia complains about the trial court's exclusion of testimony and a journal kept by Anna Barrientez, one of Jackie's in-home caregivers. Barrientez did not begin working for Jackie until April 2020, nearly two years after the July 2018 will's execution. Cynthia's counsel sought to introduce Barrientez's journal as a business record.[12] Charles's counsel objected to the admission of the journal because it was not temporally relevant to any purported testamentary documents, it contained hearsay, and it contained Jackie's private medical information in violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").[13]

---

[12] Cynthia preserved error on this issue by making an offer of proof. *See* Tex. R. Evid. 103; Tex. R. App. P. 33.1(a)(1)(B).

[13] Pub. L. No. 104-191, 110 Stat. 1936.

After expressing concerns about potential HIPAA issues with the journal, the trial court sustained Charles's objection on relevance and hearsay grounds.

Cynthia's counsel then sought to question Barrientez about her time with Jackie, and Charles's counsel objected:

> Your Honor, I'm going to object to the testimony of this witness on the basis of relevance. If her testimony involves the period from April of 2020 and thereafter it is not relevant in this case as there have been no testamentary documents alleged by either party to have been executed during that time period.

Cynthia responded that Barrientez's testimony was relevant because it "established the foundation of Jackie Mynard's testamentary intent for the writing that Jackie Mynard signed on August [sic] of 2019, and it shows that Ms. Mynard did not abandon that intent." Counsel explained that Barrientez's testimony would show that Jackie's "affections changed for the people from her previously dated will of July of 2018."

Although Barrientez's testimony and journal may have shown Jackie's state of mind after April of 2020, it has no bearing on her state of mind in July 2018, when she executed the will admitted to probate. *Cf. In re Est. of Spiller*, No. 04-22-00050-CV, 2023 WL 2733403, at *5-6 (Tex. App.—San Antonio Mar. 31, 2023, no pet.) (mem. op.) (medical records concerning testator's mental state from July 2005 did not raise fact issue as to whether testator was unduly influenced into signing will in November 2006). Thus, this evidence has no "tendency to make a fact more or less probable than it would be without the evidence," Tex. R. Evid. 401, and the trial court did not abuse its discretion in excluding it. To the extent that Cynthia sought to introduce this testimony to further her claim that the August 2019 addendum was a codicil, we have already determined that this writing does not qualify as such.

Thus, the exclusion of this evidence did not cause the rendition of an improper judgment. *See* Tex. R. App. P. 47.1(a)(1).

We conclude that Cynthia did not establish that the trial court's exclusion of this evidence was reversible error. We overrule her fourth issue.

## C. Additional Findings

In her fifth issue, Cynthia contends the trial court reversibly erred by refusing to file additional findings and conclusions as she requested. Specifically, Cynthia asserts that the trial court erred by: (1) refusing to include any factual findings on which it based its finding that the August 2019 addendum was not a codicil and did not revive the March 2016 will or revoke the July 2018 will; (2) failing to address the shifting burden of proof, which Charles was required to overcome; and (3) failing to provide findings and conclusions regarding undue influence[14] and attorney's fees.

The trial court shall make any additional findings and conclusions that are appropriate within ten days after a request is filed. Tex. R. Civ. P. 298; *Johnston v. McKinney Am., Inc.*, 9 S.W.3d 271, 277 (Tex. App.—Houston [14th Dist.] 1999, pets. denied). However, if the record shows that the complaining party did not suffer injury from the court's refusal to file additional or amended findings and conclusions, reversal is not required. *Flanary v. Mills*, 150 S.W.3d 785, 792 (Tex. App.—Austin 2004, pet. denied); *Johnston*, 9 S.W.3d at 277. An appellant must show from the record that the trial court's refusal to file the additional findings and conclusions was reasonably calculated to cause and did so cause the rendition of an improper judgment. *Johnston*, 9 S.W.3d at 277; *see* Tex. R. App. P. 44.1(a). When an appellant requests findings directly contrary to, or inconsistent with, the original

---

[14] Contrary to this contention, the trial court found that Jackie "had sufficient mental ability to understand that she was making [the July 2018 will] and *was not unduly influenced*." (Emphasis added).

22

findings, the court need not make those requested findings. *Id.* Finally, if the requested findings will not result in a different judgment, those findings need not be made. *Flanary*, 150 S.W.3d at 793; *Johnston*, 9 S.W.3d at 277.

Here, Cynthia has not shown from the record how the trial court's refusal to file such additional findings and conclusions was reasonably calculated to cause and did so cause the rendition of an improper judgment, nor has she shown she was prevented from adequately presenting her complaints on appeal. *See* Tex. R. App. P. 44.1(a). There is no evidence of injury to Cynthia because of the trial court's refusing her request for additional or amended findings and conclusions. *See Johnston*, 9 S.W.3d at 271.

We overrule Cynthia's fifth issue.

## D. Attorney's Fees

In her sixth and final issue, Cynthia contends the trial court abused its discretion in failing to award her attorney's fees. Texas Estates Code section 352.052 provides, in pertinent part as follows:

> A person designated as a devisee in or beneficiary of a will or an alleged will who, for the purpose of having the will or alleged will admitted to probate, defends the will or alleged will or prosecutes any proceeding in good faith and with just cause, whether or not successful, *may be allowed* out of the estate the person's necessary expenses and disbursements in those proceedings, including reasonable attorney's fees.

Tex. Est. Code § 352.052(b). Thus, the trial court has the discretion to award attorney's fees to devisees or beneficiaries who attempt to admit a will to probate. *Id.*; Code Construction Act, Tex. Gov't Code § 31.016(1) ("'May' creates discretionary authority or grants permission or a power.").

23

In addition to the court's discretionary authority to deny attorney's fees, the July 2018 will states, "Any person that contests this Will, forfeits any and all rights of possession/ownership or awards *and will be solely responsible for his/her attorney fees . . . .*" (Emphasis added). When construing a will, courts focus on the testator's intent, which must be ascertained from the language found within the four corners of the will if possible. *ConocoPhillips Co. v. Ramirez*, 599 S.W.3d 296, 301 (Tex. 2020). Such *in terrorem* clauses "allow the intent of the testator to be given full effect and avoid vexatious litigation, often among members of the same family." *Di Portanova v. Monroe*, 402 S.W.3d 711, 715-16 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *Lesikar v. Moon*, 237 S.W.3d 361, 369-70 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). If the purpose of a suit involving a will is to thwart the testator's intent, the forfeiture clause should be effectuated. *Ferguson v. Ferguson*, 111 S.W.3d 589, 599 (Tex. App.—Fort Worth 2003, pet. denied).

Cynthia neither acknowledges nor discusses the effect of this clause on her claim for attorney's fees. By its very language, however, it makes Cynthia, who undisputedly contested the July 2018 will's validity, solely responsible for her own attorney's fees. Given that provision, the trial court did not abuse its discretion in denying attorney's fees to Cynthia.

We overrule Cynthia's sixth issue.

24

## Conclusion

Having overruled each of Cynthia's issues, we affirm the trial court's order admitting the July 2018 will to probate.

/s/      Kevin Jewell
       Justice

Panel consists of Justices Jewell, Spain, and Wilson.